## DAVIS v. HAREFORD.

### Opinion delivered November 27, 1922.

1. RAILROADS—CONTRIBUTORY NEGLIGENCE—JURY QUESTION.—In an action for personal injuries to plaintiff in an automobile struck by a train at a crossing, whether plaintiff was negligent in failing to discover the train in time *held* for the jury.

2. RAILROADS—CROSSING ACCIDENT—PRESUMPTION.—Evidence that an injury was caused by the operation of a train makes a *prima facie* case of negligence against the company operating the train, and the burden is on the company to rebut this presumption.

3. RAILROADS—VERDICT AGAINST RAILROAD AND FOR EMPLOYEE.—In an action for injuries caused by the running of a train against the operating company and one of its employees, whose negligence is alleged to have caused the injury, since there is a statutory presumption of negligence against the company, but none against the employee, it was not error to refuse to instruct the jury that there could be no verdict against the company unless a verdict is also returned against the employee, since, if the evidence of negligence was equiponderant, it would be the duty of the jury to find for the employee and against the company.

4. TRIAL—QUESTION FOR JURY.—Where there is a conflict of evidence as to whether the statutory signals were given, the jury were the judges as to the credibility of the witnesses.

5. RAILROADS—INJURIES BY TRAIN—PROXIMATE CAUSE.—Where an automobile was struck by a train at a crossing on the driver's failure to stop in time, the proximate cause of the injuries was the striking of the automobile by the train, and not the defective condition of the emergency brake on the automobile.

6. RAILROADS—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In an action for injuries sustained by plaintiff when his automobile in which he was riding was struck by a train at a crossing, testimony as to the defective condition of the emergency brake on the automobile was admissible on the question of plaintiff's contributory negligence.

7. DAMAGES—WHEN NOT EXCESSIVE.—When plaintiff, by defendant's negligence, received severe injuries to his spine, his head and

left leg, lost a nine-year-old daughter of more than average in-
telligence, and an automobile worth $1,100, a verdict of $6,000
was not excessive.

Appeal from Crawford Circuit Court; *James Coch-
ran,* Judge; affirmed.

### STATEMENT OF FACTS.

Appellee sued appellant to recover damages for
personal injuries sustained by him by one of appellant's
passenger trains striking an automobile in which he and
members of his family were riding.

Charles Hareford was forty-six years old at the
time the accident happened, and had lived about 100
yards from the tracks of the railroad company, about
half-way between Dyer and Mulberry, in Crawford
County, Ark., for 15 years. On the 12th day of Septem-
ber, 1919, in company with his son, his little daughter
and two young ladies, he started from his home towards
Mulberry in a Briscoe automobile at about two o'clock
in the afternoon. He crossed the track and turned in
a general southeasterly direction along the south side of
the track into a public road separated by a fence from
the railroad right-of-way to a crossing about three-
quarters of a mile from his home. In attempting to
pass over this railroad crossing his car was struck by
a passenger train and entirely demolished. The ap-
pellee was severely injured and his daughter and the
two young ladies were killed. His son jumped from
the car and escaped injury.

About 75 yards back from the crossing appellee
came to a stop, and then drove up a hill towards a point
where he turned on the right-of-way of the railroad
company. The railroad right-of-way is about 100 feet
wide, with the track in the middle of it. He drove fifty
feet up the hill and stopped again. As he approached
the right-of-way there were bushes, which, to a certain
extent, obstructed his view, and he told his son to keep
a lookout. His son was thirteen years of age at the
time, and the last he saw of him before the accident he

had one foot on the running board ready to jump from the car. When appellee first heard the train, it was right on him. He had listened for the train, if approaching, to blow the whistle or ring the bell, and if he had heard this warning he would have stopped his car. He did not hear any alarm given by the train until he was about 10 feet from the track, and then he saw the engine. He applied the emergency brake at once, but could not stop the car in time to prevent the train from striking it. Appellee was looking towards the west, the direction from which the train came, as he approached the crossing, and was listening and looking to ascertain if a train was approaching. He had a good emergency brake on the car. When he got to the top of the hill, he was at the best point of observation of the track, and was running something like seven or eight miles an hour. There was no train in sight, and he could not hear one approaching. He then proceeded down the little hill towards the crossing, and never saw the train or heard any alarm given by it as he approached the crossing. The first he heard of the train was practically when he was about ten feet from the track and the train came into view. He could have heard the train if there had been any signals given by ringing the bell or blowing the whistle. He was listening for the approach of the train. The bushes between the road and the track as he approached the crossing were all the way from four to seven feet high, and covered up the right-of-way fence down to the cattle guard. He stated further that he had only owned the Briscoe car about three months, and $1,100 was its standard price. Appellee was severely injured in his spine, his head and his left leg. He was unconscious for forty-eight hours after he was struck. He has suffered from the injury in his spine ever since the accident. His daughter was past nine years of age, and was a girl of more than average intelligence. She was a great help to her mother.

According to the testimony of Elmer Wright, he was working on a section of the railroad, at the time

appellee was injured, about a quarter of a mile from the crossing. The engineer did not whistle for the crossing, and the bell was not ringing when the train passed him going towards the crossing.

Two other witnesses testified that bushes were allowed to grow up along the right-of-way fence down to the cattle-guard, and that they were from four to six feet high. Still other witnesses testified that they saw appellee approaching the crossing in his car, and that the statutory signals of ringing the bell or blowing the whistle were not given.

C. F. Edrington, the engineer of the train, was the principal witness for appellant. According to his testimony, he had been a locomotive engineer for thirty-three years, and was the engineer on the engine which hit the automobile of appellee. He was running between 30 and 35 miles an hour towards the crossing. He sounded the whistle and turned on the air as he approached it. This rings the bell automatically until it is turned off. He was keeping a lookout, and first saw the automobile twelve or fifteen feet from the engine. He immediately applied the emergency brake and whistled the alarm signal. He struck the automobile between the hood and the wind-shield, and that threw the back end of the car into the driving wheels of the engine. The bell was still ringing when the accident occurred.

Other witnesses for appellant testified that the signal for the crossing was given by blowing the whistle, and that the bell was kept ringing until the accident happened.

Raymond Hareford, the thirteen-year-old son of appellee, had been a witness on the first trial of the case, but was absent in Oklahoma at the time of the trial of the present case in the court below. The court allowed his former testimony to be read as evidence to the jury. According to his testimony, he was on the front seat of the car with his father, and had gotten on the running board just before the train hit the car. The car was going slow, and the front wheels had just got on the

track when the train hit it. They had slowed up the automobile on the hill by the bushes and looked and listened for the train, but could neither see nor hear it. Raymond first saw the train about twenty feet away, and got out on the running board and jumped from the automobile. When his father saw the train, he applied the brake, but the brake slipped and would not hold. If the brake had not slipped, there was plenty of room to stop the car before it got on the track, and the train would not have hit it. His father killed the engine and threw on the brake. The brake was defective. It had been slipping and would not hold. The emergency brake was defective and would not hold.

In rebuttal appellee testified that he turned the current off and put on the emergency brake when he saw the train, and that there was nothing wrong with the brake.

The jury returned a verdict for appellee in the sum of $6,000, and from the judgment rendered appellant has duly prosecuted an appeal to this court.

*Thos. B. Pryor* and *Vincent M. Miles,* for appellant.

It was error to refuse appellant's requested instruction No. 12. Appellant, if liable at all, under the allegations of the complaint, was only liable under the doctrine of *respondeat superior.* See 143 Ark. 376. Section 8575, C. & M. Digest, does not provide for a different rule of liability as between Edrington, the engineer, and Davis, as held by the trial court. There could be no liability against Davis, without liability against Edrington. Instruction No. 9 requested by appellant should have been given. There was testimony to support the theory that the accident was caused by the brake on the automobile slipping, which if true, would have been the proximate cause of the accident, and therefore no liability on the part of defendant. 97 Ark. 576. Instruction No. 3 on the question of keeping a lookout should have been given. It is not necessary that both the fireman and engineer keep a lookout on a straight track. 93 Ark. 24. Instructions 5 and 6 on the question of contributory negligence

in reduction of damages should have been given without modification. Such acts were applicable to the government operating the railroads. *Dahn* v. *Davis*, U. S. Sup. Ct., 42 S. C. Rep. 320.

Starbird & Starbird, for appellee.

Proof of the injury made a *prima facie* case against Davis (but not against Edrington), and the burden was on him to disprove the alleged acts of negligence. C. & M. Digest, sec. 8562; 87 Ark. 308; 88 Ark. 12; 117 Ark. 504; 139 Ark. 261; 127 Ark. 323. Instruction No. 12 requested by appellant was therefore properly refused. Instructions 9 and 10 were also properly refused. The question of proximate cause is one for the jury. 97 Ark. 584; 104 Ark. 62. The instructions were based upon only a part of the facts, which is not good practice. 141 Ark. 25. A proper lookout on the part of appellant would have discovered the automobile in time to have prevented the accident. 136 Ark. 259. Appellee had a right to rely upon the statutory signals being given. 136 Ark. 8; 138 Ark. 589.

Hart, J., (after stating the facts). It is first earnestly insisted that the evidence is not legally sufficient to warrant the verdict. In this contention we cannot agree with counsel for appellant. The undisputed evidence shows that the injuries sustained by appellee were caused by the engine of one of appellant's passenger trains striking an automobile in which appellee and other members of his family were riding. The accident happened while they were attempting to cross the railroad track of appellant at a public road crossing. Under our statute this proof was sufficient to make out a *prima facie* case of negligence against the appellant. This is conceded by counsel for appellant, but they insist that appellee is barred of recovery on the ground of contributory negligence, and that on this account the court should have directed a verdict in favor of appellant.

It is true that the engineer in charge of the train testified that he gave the statutory signals of his approach to the crossing, and that he applied the emergency

brake and gave the alarm whistle as soon as he saw the automobile approaching the crossing. It is also true that other witnesses testified that the whistle was blown for the crossing, and that the bell was kept ringing until after the accident happened. But it cannot be said that this testimony is reasonable and consistent in itself and is not disputed by any other evidence in the case.

Witnesses for appellee testified that they saw the automobile approaching the crossing, and that the statutory signals of ringing the bell or blowing the whistle were not given. Appellee himself testified that he was listening and looking for the approach of the train, and neither saw nor heard it approaching nor heard the bell ringing nor the whistle blown. He almost stopped his car as he got on top of the little hill where he could see in both directions. He neither saw nor heard the train approaching, and then continued on his way towards the crossing at a low rate of speed. His vision was somewhat obscured by bushes from four to seven feet high which grew along the right-of-way fence until he came to the cattle guard. Appellee did not see nor hear the train until he got within ten feet of it. He immediately applied his emergency brake, but could not stop his car. He denied that the emergency brake was defective and out of order, as testified to by his little son. The evidence in favor of appellee made the question of contributory negligence one for the jury, and the court did not err in refusing to direct a verdict for appellant. *Ark. Cent. Ry. Co.* v. *Williams*, 99 Ark. 167; *Bush* v. *Brewer*, 136 Ark. 247, and *St. L. S. F. R. Co.* v. *Whitfield*, 155 Ark. 560.

Counsel for appellant next insists that the court erred in refusing to give instruction No. 12, which is as follows:

"You are instructed in this case that you cannot return a verdict against James C. Davis, as agent for the President, unless you also return a verdict against C. F. Edrington; in other words, there can be no verdict against one without a verdict against the other."

Counsel for appellant rely upon the case of *Patterson* v. *Risher,* 143 Ark. 376. In that case it was held (quoting from syllabus) : "Where a master jointly with its servant is sued for an injury to a co-servant, the injury being alleged to be proximately caused by the servant's negligence, it was not error, at plaintiff's request, to refuse to instruct that the jury might find for or against either defendant, as, if there was no negligence of the defendant servant, there could be no liability on the part of the master."

We do not think that case is controlling here. It is true that in that case, as in the present case, the servant of the company whose negligence is alleged to have caused the injury was made a party defendant to the action. But in that case there was no statutory presumption of negligence against the coal company. The burden of proof was upon the plaintiff to establish the negligence of the coal company, and under the facts stated he could not do that without also showing negligence against Risher, the superintendent of the mine and the codefendant of the coal company. The burden of proof in each instance rested upon the plaintiff to show negligence. The burden was on him to show negligence on the part of the coal company as well as upon the part of Risher.

Here the rule is different. The burden of proof was upon the appellee to show negligence on the part of Edrington, but under the long established doctrine in this State, where an injury is caused by operation of a railway train, a *prima facie* case of negligence is made against the company operating the train, and the burden of proof is upon the railroad company to rebut this presumption or inference of negligence. *Barringer* v. *St. L. I. M. & S. R. Co.,* 73 Ark. 548; and *St. L. I. M. & S. R. Co.* v. *Armbrust,* 121 Ark. 351.

Where the burden of proof rests upon a party to establish an ultimate fact, it cannot be said to be established unless the evidence of its existence or non-existence is proved by a preponderance of the evidence, and

this is true whether the burden rests on the party to
establish an affirmative or negative proposition. The
action against Edrington would be defeated if the jury
found from all the evidence that it was just as probable
that the injury occurred without negligence on his part
as if he was guilty of negligence. This is so because it
devolves upon appellees to establish Edrington's neg-
ligence in order to recover against him. Not so in his
action against the railroad company. As we have al-
ready seen, the undisputed evidence shows that appellee
was injured by one of appellant's passenger trains strik-
ing an automobile in which he was riding at a public
crossing.

Under our statute the burden of proof then devolved
upon the railroad company to show that the accident
happened without any fault or negligence on its part.
So, if the jury had been of the opinion that the evidence
of negligence or not on the part of Edrington was of
equal probative force, still it would have been its duty
to have found against the railroad company. In short,
such a finding of the jury would lead to a verdict in
favor of Edrington and against the railroad company.

The testimony of Edrington in regard to giving the
statutory signals was directly contradicted by other
witnesses besides appellee, and his testimony with regard
to keeping a lookout is inferentially contradicted by that
of appellee. Hence it cannot be said that his testimony
is reasonable and consistent in itself. The jury were
the judges of the credibility of the witnesses, and might
have found that the evidence was in equal poise as to
the negligence of Edrington. Hence it might have re-
turned a verdict in his favor because, as above stated,
the burden was upon appellee to establish his negligence,
and it might have returned a verdict against appellant
because the burden was upon it to show that it was not
negligent. Therefore, the court did not err in refusing
to give this instruction.

It is next insisted that the court erred in refusing
to give instruction No. 9, which is as follows: "You are

instructed that if the driver of the car, by the exercise of ordinary care with reference to looking and listening, as you find in these instructions, could have discovered the train in time to have stopped, and he did not stop the car because there was a defective brake on said car, then the defective brake on said car was the proximate cause of the injury, and your verdict must be for the defendant.''

This instruction was erroneous because it, in effect, told the jury that if the emergency brake on the automobile was defective, this was the proximate cause of the injury. The proximate cause of the injury was the train striking the automobile and thereby demolishing it and severely injuring the appellee and killing his daughter. The question of the brake being defective only went to the contributory negligence of appellee. If the emergency brake of appellee's car was defective, as testified to by his son, such fact would tend to show that appellee was guilty of contributory negligence in the use of it; but this would not make it the proximate cause of the injury. Therefore the court did not err in refusing to give this instruction.

We do not deem it necessary to discuss the instructions given by the court. It is sufficient to say that they fully and fairly submitted the respective theories of the parties to the jury.

We do not think that the verdict is excessive. A mere reading of the evidence on the part of the appellee will show that the jury was warranted in finding for appellee in the sum of $6,000. Besides the death of his daughter and the loss of his automobile, he was severely injured in his spine and suffered great pain therefrom.

It follows that the judgment must be affirmed.

Smith, J., dissents.