KANSAS CITY SOUTHERN RAILWAY COMPANY v. COCKRELL.

Opinion delivered November 2, 1925.

1. CARRIERS—INJURY TO PASSENGER—RES IPSA LOQUITUR.—In an action by a passenger for injury in a railroad collision, where the evidence conclusively established that the collision was caused by the negligence of some of defendant railway company's servants, but not the negligence of the conductor operating the train, jointly sued with the railway company, the doctrine of *res ipsa loquitur* applies as to the liability of the company but not as to that of the conductor.

2. REMOVAL OF CAUSES—REFUSAL PROPER WHEN.—In a passenger's action for injury from a railroad collision, where the federal court had remanded the case to the State court after finding that the joinder of the conductor, a resident, was not shown to have been fraudulent, the court properly denied removal after refusing to direct a verdict for the conductor, since the holding of the federal court was conclusive on the issue of fraud, and the conductor continued to be a party, in the absence of a voluntary dismissal as to him by the plaintiff.

3. CARRIERS—INJURY TO PASSENGER IN COLLISION—PRESUMPTION.— In an action by a passenger against a railway company and one of its employees for injuries received in a collision, a verdict for the employee and against the company, based upon the testimony of the employee showing no negligence on his part, is not contradictory, since there is no presumption of negligence against the employee while proof of the injury by reason of the collision raised a presumption of negligence against the company.

4. CARRIERS—UNDISPUTED TESTIMONY OF NONLIABILITY.—In a passenger's action for negligent injury from a railway collision against the railway company and one of its employees where plaintiff failed to sustain the burden of proving the negligence of the employee, testimony of the employee, though exonerating himself, was not undisputed evidence of nonliability of the company, since the testimony of an interested party is not regarded as undisputed in testing the sufficiency of his evidence.

5. EVIDENCE—OPINION OF NON-EXPERT.—In a passenger's action for injury from a railroad collision, it was not error to permit a non-expert to testify from observing plaintiff's physical condition that he was unable to perform manual labor on account of a hernia.

6. CARRIERS—INSTRUCTION AS TO DAMAGES.—In a passenger's action for a negligent injury received in a railway collision, an instruction to assess such damages as will compensate for injuries, if any, and physical or mental anguish suffered in the past or to be suffered in future, if any, was not objectionable as ignoring evidence of a possible reduction of damages; if defendant desired an instruction as to a possible reduction of damages by means of a surgical operation, he should have requested it, but could not raise the question for the first time in a motion for new trial.

7. DAMAGES—BAD REPUTATION OF PLAINTIFF.—In an action by a passenger for damages received in a railroad collision, an instruction that plaintiff's bad reputation for truth and morality could be considered only as affecting his credibility was not erroneous as excluding consideration of such fact in determining extent of his future earnings, where plaintiff depended on earnings from manual labor, which could not be affected by bad reputation.

8. TRIAL—MISCONDUCT OF PARTY.—In an action for injury from a railroad collision, a conversation between plaintiff and his father with jurors concerning the weather and farming was not such misconduct as would vitiate a verdict in plaintiff's favor.

Appeal from Polk Circuit Court; *B. E. Isbell,* Judge; affirmed.

*James B. McDonough,* for appellant.

*Lake, Lake & Carlton,* for appellee.

McCULLOCH, C. J. The plaintiff, William Cockrell, instituted this action to recover damages on account of personal injuries alleged to have been received while a passenger on one of defendant's freight trains between Mena and DeQueen. He alleged that there was a collition between the train on which he was riding and another freight train, and that the collision was caused by negligence of Roberts, the conductor, in failing to exercise care to control the movements of his train. He alleged that he was sitting in the caboose when the collision occurred, and that he was violently thrown from the seat and injured about the head and back, had two ribs broken, and that hernia resulted. The conductor, Roberts, who was a resident of the State, as was the plaintiff himself, was joined as defendant.

Appellant filed, in apt time, its petition for removal to the Federal court on the ground of diversity of citizenship, and alleged that plaintiff had joined, as defendant in the action, Roberts, the conductor, for the wrongful and fraudulent purpose of defeating the right of removal. The transcript of the proceedings was filed in the office of the clerk of the Federal court of that district, but the plaintiff filed a motion presenting an issue on the allegations of fraud in joining Roberts as a defendant and asked that the cause be remanded, and the court, after hearing the motion, remanded the cause to the State court.

Appellant and the other defendant filed separate answers containing specific denials of all the allegations of the complaint, and there was a trial of the issues, which resulted in a verdict in favor of Roberts, but in favor of the plaintiff against appellant for the recovery of damages in the sum of $2,500.

The plaintiff himself was introduced as a witness, and his testimony established the fact that he was a passenger on the train; that there was a violent collision between his train and another freight train; that he was thrown from his seat and received serious personal injuries—

among other things, two broken ribs and a hernia. Other witnesses were introduced by the plaintiff to prove the extent of his injuries. Plaintiff also introduced as a witness Roberts, the conductor, who testified concerning the collision between the trains, but whose testimony exonerated himself from fault concerning the collision. It appears from the testimony that plaintiff took passage on this train, which was south-bound, from Mena to DeQueen, and that after the train reached Gilham, an intervening station, the conductor received orders to meet an extra north-bound freight at that place. These orders, it appears from the testimony of Roberts, were received after both trains had reached that station. Roberts' train was standing on the main track, headed south, and the other train was partly on the main track and partly on the side track south of the station. Roberts testified that he transmitted the orders to the engineer by the hands of two brakemen directing that the train proceed southward if it was clear ahead. The testimony of Roberts, if believed, completely exonerated himself from fault, but the necessary inference was that the collision was caused, either by the negligence of the brakemen in failing to properly transmit the orders to the engineer, or the negligence of the engineer in going forward with the other train standing in front of him on the track. At any rate, it is conclusively established that the collision was caused by negligence of some of the servants of appellant. The doctrine of *res ipsa loquitur* applies, so far as relates to the question of liability of appellant. Not so, however, as to the liability of the conductor.

When appellant rested its case, Roberts, who was represented by separate counsel, moved for a directed verdict, which was overruled by the court, and thereupon appellant presented its second petition and bond for removal to the Federal Court on the ground that the plaintiff had failed to make out a case against Roberts, and that the cause had then, for the first time, become

removable. The court overruled the petition, and the cause proceeded to a verdict and judgment in favor of plaintiff.

It is contended, in the first place, that the court erred in refusing to grant the petition for removal. The ground urged for removal of the cause at the point at which the second petition was filed is that, notwithstanding the plaintiff had not dismissed the cause as to Roberts, and the court had refused to direct a verdict as to him, according to the undisputed evidence plaintiff had made no case against Roberts for submission to the jury, and that this gave appellant the right to remove the cause, as if Roberts was no longer a party to the action. We do not agree with counsel for appellant in this contention. If the plaintiff had, at any stage of the proceedings, dismissed the action against appellant's co-defendant, who was a resident of the State, the cause would then, for the first time, have become removable. *Powers* v. *Chesapeake & Ohio Railway,* 169 U. S. 92; *Fritzlen* v. *Boatmen's Bank,* 212 U. S. 364. The distinction however between those cases and the present one is that the plaintiff did not dismiss the cause as to appellant's co-defendant, and, whether rightly so or not, the latter was still a party-defendant and remained as such until he was finally exonerated by the verdict of the jury. This distinction is very clearly pointed out by the Supreme Court of the United States in numerous cases. *Kansas City Suburban Belt Ry. Co.* v. *Herman,* 187 U. S. 63; *Alabama Great Southern Ry. Co.* v. *Thompson,* 200 U. S. 206; *Lathrop* v. *Interior Constr. & Imp. Co.,* 215 U. S. 246; *American Car. & Foundry Co.* v. *Kettelhake,* 236 U. S. 311; *Great Northern Ry. Co.* v. *Alexander,* 246 U. S. 276. In the case last cited above, the court said: "It is also settled that a case arising under the laws of the United States, non-removable on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such con-

version can only be accomplished by the voluntary amendment of his pleadings by the plaintiff, or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or parties defendant.'' The trial court was therefore correct in denying the petition for removal.

The decision of the Federal court in remanding the cause was conclusive on the issue of fraud in joining the conductor as defendant, and that question could not be raised again. Roberts was still a party to the action, notwithstanding the fact that plaintiff had failed to make out a case against him, and the court should have directed a verdict in his favor. As long as his retention in the case continued, since it was adjudged that the joinder of the defendant was not fraudulent, he was still a party until eliminated by a voluntary dismissal by the plaintiff, and the cause was not removable.

It is next contended that the verdict of the jury was contradictory in finding in favor of Roberts, against whom the specific charge of negligence was made, but against appellant, whose liability accrued solely on account of its responsibility for the negligence of its own servants, and that the court should not have rendered judgment against appellant on the verdict. This point has been decided in another case against the contention of counsel for appellant. *Davis* v. *Hareford,* 156 Ark. 67. The verdict of the jury as to the liability of the two defendants was not essentially inconsistent in view of the fact that the burden of proof rested upon the plaintiff to make out a case against Roberts, there being no presumption of negligence on his part, but on the other hand the proof of the injury by reason of the collision of the two trains raised a presumption of negligence against appellant, and the burden of proving negligence did not rest upon the plaintiff. The plaintiff failed, as against Roberts, to make out a case against him, the burden of proof being upon plaintiff to do so, but Roberts' own testimony, though containing absolute denial of fault on

his part, did not, as against appellant, constitute undisputed evidence of nonliability. His testimony afforded no affirmative evidence of negligence and added nothing to the plaintiff's case against him or the appellant. It did not constitute undisputed evidence of nonliability, for he was a party to the suit, and the rule established by our court is that the testimony of a party to an action interested in the result cannot be regarded as undisputed in testing the legal sufficiency of the evidence. *Skillern* v. *Baker,* 82 Ark. 86.

Another assignment of error relates to the ruling of the court in permitting W. L. Cockrell, plaintiff's father, to testify concerning the extent of plaintiff's injuries. The point of the contention is that the witness was not an expert, but was permitted to testify as such. We do not think that counsel properly estimate the character of the testimony of the witness, for he did not pretend to be an expert or to testify as such, but merely testified concerning his knowledge of plaintiff's physical disability as actually observed by the witness himself. The testimony of the witness was, in effect, that he was familiar with his son's condition, and that on account of the hernia he was not able to perform manual labor. We do not think that there was any error in permitting the witness to make this statement.

There are very numerous assignments of error with reference to the court's charge to the jury—in fact, the ruling of the court in giving each of the instructions requested by plaintiff is made the subject of an assignment of error, and each refusal of the court to give an instruction requested by appellant is also made the basis of an assignment of error. These assignments of error are so numerous that it is not practicable to discuss them all. We have considered them and find no error, and will only discuss such as we deem of sufficient importance.

There was evidence introduced to the effect that plaintiff could have been relieved of the hernia by a surgical operation at an expenditure of between $150 and $250.

An exception was saved as to the ruling of the court in giving a certain instruction on the ground that it ignored the issue that the damages could have been reduced by plaintiff if he had subjected himself to a surgical operation. The instruction which it is contended is offensive on that account reads as follows:

"6. If you find for the plaintiff, you will assess his damages at such sum as will compensate him for the bodily injury sustained, if any; the physical and mental anguish suffered and endured by him in the past, if any; and that which he will endure in the future, if any, by reason of said injury; his loss of time, if any, and his pecuniary loss from his diminished capacity for earning money in the future, if any; and from these, as proved from the evidence, assess such damages as will compensate him for the injuries received."

Without deciding whether or not the plaintiff was compelled to reduce his damages by a surgical operation, it is sufficient answer to appellant's contention to say that the instruction is not open to the objection made to it. It does not ignore any question of possible or probable reduction of damages. The instruction, reasonably interpreted, relates to damages which proximately resulted from the injury inflicted on account of negligence of appellant's servants. If the instruction was thought to ignore any other issue in the case, the objection should have been specifically made so as to point it out to the court. If the result of the injury could have been lessened and the damages thereby reduced by any act or conduct of the plaintiff, the burden to prove it rested upon appellant, and if an instruction on that issue had been desired, appellant should have asked for it. This was not done, but, on the contrary, appellant suffered the case to go to the jury upon general instructions as to the measure of damages, without calling the attention of the court in any way to the issue of reducing the damages by a surgical operation. It was too late to attempt to raise that question in the motion for a new trial.

Appellant contended that plaintiff was suffering from hernia prior to the time of his being injured on the train, and appellant requested the court to give an instruction telling the jury that there would be no liability if plaintiff's physical disability existed prior to the train collision or otherwise than as a result of the collision, and the court gave that instruction. We think that the instructions on the measure of damages were proper, and there was no error in that regard.

Again, it is urged that the court committed an error in giving an instruction telling the jury that proof of bad reputation of the plaintiff for truth and morality could only be considered as affecting his credibility as a witness. The contention is that the jury should have been permitted to consider this fact for the purpose of determining the extent of his future earning capacity. The plaintiff does not appear to have had any vocation involving professional skill or intelligence or high traits of character, but merely depended upon manual labor, therefore the question of his poor reputation could have had no bearing upon his probable future earnings. It was too vague to afford any guide to the jury in determining what his earnings in the future by physical labor would probably be.

These are all of the assignments in regard to the court's charge that we deem to be of sufficient importance to discuss.

Finally, it is contended that the verdict should be set aside on account of alleged misconduct on the part of the plaintiff and his father in permitting themselves to be brought into personal contact with members of the jury while the case was being tried, or at least before the verdict was rendered. In support of this assignment, appellant introduced the affidavit of one John T. Tisdale, who was an employee of appellant for the purpose of securing evidence in this case. The affidavit, after stating that affiant was acquainted with the plaintiff, and his father, W. L. Cockrell, reads as follows:

"On the morning of April 24th, about 7:45 A. M. I was at the north entrance of Polk County court house, where I noticed W. L. Cockrell in conversation with some of the jurors. I also noticed one or two of the jurors standing near Wm. Cockrell, plaintiff. During this time I heard an extensive conversation between W. L. Cockrell and the juror. They were discussing at the time I first appeared some matters relative to farming, and later one particular juror asked W. L. Cockrell where he lived. He told him near Hot Springs, at Bear, Arkansas. This juror also asked Cockrell what his name was and he told him 'Cockrell.' The juror replied that, 'Yes, I remember you was on the witness stand yesterday.' W. L. Cockrell stated that, 'That was my son in that case.' At this time they continued their conversation with reference to farming conditions near the Cockrell home as well as farming conditions near Mena, Arkansas. This conversation lasted for perhaps twelve to eighteen minutes. This conversation continued until someone called to the juror from upstairs. I also noticed during this time that Wm. Cockrell, plaintiff, was engaged with conversation with two of the jurors whose names I do not know. This conversation, so far as I could hear, was concerning the weather conditions and rain. I only heard a few words of their discussion. They remained in conversation until the jurors were called up stairs."

It is contended that this conversation between some of the jurors and the plaintiff and his father constituted such improper conduct as should be treated as sufficient to vitiate the verdict. Counsel cite many authorities sustaining the rule that the slightest misconduct on the part of parties to an action in approaching members of the jury is deemed sufficient to set aside a verdict which might have been in part obtained by reason of the misconduct. Giving full force to all of these authorities, we find none of them justifies us in holding that a mere chance conversation about the weather, even between the

plaintiff himself and one of the jurors, would be sufficient to vitiate the verdict of the jury. It would be carrying the doctrine too far to hold that an incident of that kind, where it appears affirmatively that the conversation extended no further, is sufficient to vitiate the verdict.

Finding no error in the record, the judgment is affirmed.