MISSISSIPPI RIVER FUEL CORPORATION v. SENN.

Opinion delivered November 2, 1931.

J. G. *Williamson*, Lamar *Williamson*, and *Adrian Williamson*, for appellant.

W. F. *Norrell* and R. W. *Wilson*, for appellee.

MEHAFFY, J. This action was brought by the appellee against the appellant, Mississippi River Fuel Corporation, and R. R. Hudgins, to recover damages for a personal injury alleged to have been caused by the combined and concurring carelessness and negligence of the defendant, Mississippi River Fuel Corporation, and R. R. Hudgins.

The appellee and R. R. Hudgins were employees of the appellant, Mississippi River Fuel Corporation, and were moving and carrying by means of hand sticks a large and heavy meter from a truck to the place on the appellant's pipe line where it was to be installed.

It is alleged that R. R. Hudgins, an employee of appellant, carelessly and negligently, and without notice to appellee, caught hold of the end of the hand stick opposite where appellee was working, and suddenly and carelessly and negligently, and without warning, jerked and raised the opposite end of the hand stick to that held by appellee, and thereby threw practically all the weight of the heavy meter, and placed upon him the burden of lifting or holding up more than 1,000 pounds; that appellee was strained in his entire body, and otherwise injured as described in his complaint.

He alleges that the injuries were permanent, causing him great mental anguish and physical pain, and that he was compelled to undergo a major operation; that he was wholly incapacitated to perform any physical labor, and will be totally and permanently incapacitated to perform physical labor and earn a livelihood. He asked damages for his injuries in the sum of $15,500.

The appellant, without entering its appearance for any other purpose, filed motion to dismiss, alleging that the court had no jurisdiction. This motion was overruled by the court and a guardian was appointed for R. R. Hudgins, who was a minor, and answer was filed denying the material allegations in the complaint.

The appellant then filed a second motion to dismiss on the ground that the court had no jurisdiction. This motion was overruled, and appellant then filed a demurrer, alleging as grounds for demurrer, that the court had no jurisdiction over the person of the defendant, and that there is a defect of parties defendant, in that the defendant, R. R. Hudgins, is improperly joined as a party defendant. This demurrer was overruled by the court. The appellant saved proper exceptions to the overruling of each of its motions and the demurrer.

The appellant then filed answer specifically denying each material allegation in the complaint and alleging that if appellee was injured, the same was caused by physical infirmity or disease, for which appellant was not responsible. It alleged in its answer that, if appellee was injured as alleged in his complaint, said injury was caused by appellee's own negligence.

It also alleged that, if appellee was injured as stated in his complaint, his injury was caused by a risk necessarily incident to his employment and which was assumed by him.

The appellant owned a gas conduit pipe line extending from the gas fields of Louisiana across the State of Arkansas to St. Louis, Missouri. Its main line passed through Drew County, Arkansas. From a point six or

seven miles west of Monticello, a branch line was constructed to Monticello.

The appellee was 27 years of age and had been employed in this work for two or three weeks. The appellant, at the time of the injury complained of, was installing two gas meters near the western corporate limits of Monticello. The meters had been brought to the place by truck and placed on the ground about 30 feet from the point where they were to be installed.

The meters were to be put on a platform about 24 inches above the ground. In moving the meters from the place where they had been put on the ground to the platform, a crew of nine men, including the foreman, was engaged. The meter had a short extension of pipe four inches in diameter and about eight inches long sticking out of each end of the meter with a collar or flange where it would be connected with the gas line. Six men carried the meter to the platform by placing an iron crowbar under each of these pipes, one man lifting at each end of the crowbar, and one man lifting at the end of the extension pipe.

The appellee had hold of one end of the crowbar, and Virgil White had hold of the other end of the crowbar. The foreman, A. B. Willey, was on the platform, assisting in putting the meter on the platform.

When the crew undertook to put the meter on the platform, some of them called for help, and Ralph Hudgins, who is charged with the negligence complained of, took hold of the end of the crowbar held by White, and opposite to the end held by appellee. When Hudgins caught hold of the end of the crowbar, he lifted it something like three inches higher than the opposite end, which was held by the appellee. Appellee claims that when this was done practically the entire weight of the meter was thrown on him; that the walls of his stomach burst his appendix, and that he was ruptured. He estimates the weight of the meter at from 1,000 to 1,500 pounds.

None of the persons with appellee knew that he was injured in any way. The injury was alleged to have occurred on Thursday, and he worked Friday and Saturday; but he alleges that he turned hot, cold and blind, but he made no complaint at the time. He did not do anything for about 30 minutes; his work on Friday and Saturday was light. Prior to the injury he had complained from time to time of a pain in his lower right side and on Sunday afternoon he complained, and he did not work Monday. On Monday afternoon he became seriously ill, and the doctor said he had appendicitis, and he grew steadily worse until he was taken to Pine Bluff on Wednesday the 26th, where he was operated on for appendicitis, according to Dr. Clark's evidence. Dr. Simmons and Dr. Duckworth said he was operated on for hernia.

Appellee did not notify any of the officers, agents, or employees of appellant that he claimed to have been injured while working, but he testified that some days before he filed suit he wrote to some official of appellant, and on May 10th filed suit in the Drew Circuit Court.

While the appellee alleged concurrent negligence of Hudgins and appellant, the verdict and judgment is based on the alleged negligence of Hudgins, and the judgment against appellant is for the negligence of its servant, Hudgins alone. The jury returned a verdict in favor of Hudgins, and a verdict against the appellant for $10,500. The case is here on appeal by the Mississippi River Fuel Corporation.

Appellant's first contention is that the verdict in favor of R. R. Hudgins exonerates appellant, Mississippi River Fuel Corporation, from liability. It is its contention that a verdict in favor of the servant is inconsistent with a verdict against the master for the servant's negligence.

We agree with appellant that there is no negligence shown except the negligence of the servant, Hudgins. The verdict of the jury in favor of the servant, Hudgins, did not mean that Hudgins was not guilty of negligence.

Appellant cites numerous authorities to support its contention that a verdict in favor of the servant exonerates the master in cases where the master is sought to be held liable solely on the ground of the negligence of the servant.

In one of the cases relied on the court said: "Where a recovery is sought in an action against a principal and his agent based upon the act or omission of the agent which the principal did not direct and in which he did not participate and for which his responsibility is simply that cast upon him by law by reason of his relationship to the agent, a judgment in favor of and exonerating the agent generally *ex proprio vigore* relieves the principal of responsibility and may be availed of by the principal for that purpose." *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468.

In another case cited and relied on by the appellant, and which appellant says is one of the leading American cases on the subject, the court said: "The general rule undoubtedly is that, where one has received an actionable injury at the hands of two or more persons acting in concert, or acting independently of each other, if their acts unite in causing a single injury, all of the wrongdoers, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and he may enforce the liability in an action against them all jointly, or in any one of them severally, or against any number of them less than the whole. While the wrong committed is the joint wrong of the several parties participating therein, it is also, in contemplation of law, the several wrong of each of the participants. On this principle at common law, a jury in actions *ex delicto* against several persons, contrary to the rule in actions *ex contractu,* were permitted to find against one or more of the defendants and in favor of the others. The rule with regard to actions *ex delicto* remains the same under the Code, and the practice now permits the jury in an action for tort against several defendants to return a verdict against so many of them as the proofs show

are guilty of the wrong charged, and in favor of the others. As it is the peculiar province of the jury to determine the guilt or innocence of the several defendants, a verdict finding in favor of some and against others, even though there may be no very apparent reason for the distinction made, is not for that reason alone so far arbitrary or inconsistent as to require a reversal of the judgment entered thereon against those who have been found guilty." *Doremus* v. *Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649.

The above rule is the rule adopted by this court in all actions against joint tort feasors. But this court and all the courts, so far as we know, which hold that a verdict in favor of the servant exonerates the master, where the liability of the master is based wholly on the negligence of the servant put it on the ground that a verdict in favor of the servant is a finding by the jury that the servant is not guilty of negligence, and, since the master's liability is based solely on the negligence of the servant, finding in favor of the servant exonerates the master. We know of no decision that puts the right of the master to be exonerated on any other ground.

This court, in the case of *Patterson* v. *Risher, supra,* and in other cases has followed the above rule.

A holding that the master would be exonerated because of a verdict in favor of the servant on any other ground would be absurd. The finding in favor of the servant in the case at bar was not necessarily a finding that the servant was not guilty of negligence. The appellant, in its answer, pleaded the contributory negligence of the appellee, and requested, and the court gave, instructions on contributory negligence requested by appellant. It is now argued that the appellee was guilty of no contributory negligence, but that is immaterial. The appellant evidently thought there was evidence sufficient on which to base its instructions on contributory negligence, and the trial court evidently thought there was sufficient evidence to submit the question to the jury, and certainly the jury had a right to believe that the

court held there was sufficient evidence to submit the question of appellee's contributory negligence to it.

It cannot be said then that the finding in favor of the servant was a finding that he was not guilty of negligence. Under our law, any individual, as the servant in this case, who may be guilty of any negligent act resulting in injury to another, cannot be held liable if the injured party's negligence contributes in any degree to produce the injury, so that but for his contributory negligence the injury would not have happened; but this is not the law with reference to corporations.

Our statute provides that in actions against corporations for personal injuries, the fact that the injured employee might have been guilty of contributory negligence shall not bar a recovery. Section 7145, Crawford & Moses' Digest.

It will therefore be seen that it might be perfectly proper to find a verdict in favor of the employee charged with negligence and against the master, because appellee would be entitled to a verdict against the corporation, notwithstanding his contributory negligence, but would not be entitled to a verdict against the servant, no matter how guilty he may have been of negligence, if the injured party was guilty of any contributory negligence.

If a suit was prosecuted against a corporation, based solely on the negligence of a servant, and it was shown that the injured party was guilty of contributory negligence, to hold that the verdict in favor of the servant, because of the injured party's contributory negligence, exonerated the master would abrogate the comparative negligence statute.

None of the cases cited and relied on by appellant discussed the question here involved, and this question was not involved in any of the cases cited, but all of the cases relied on based their holding that a verdict in favor of the servant exonerates the master on the ground that the verdict is a finding that the servant was not guilty of negligence.

The rule is stated in C. J., as follows: "Under comparative negligence rule, where an action for negligence against a corporation and certain of its employees, there is a plea of contributory negligence on the part of the defendant and evidence tending to establish it, the jury may, if the evidence justifies it, under the comparative negligence rule, find in favor of such employees and against the corporation." 39 C. J. 1369. See also *Arnett v. Ill. Central Rd.*, 188 Iowa 540, 176 N. W. 322; *Gardner v. So. Ry. Co.*, 65 S. C. 341, 43 So. 816; *Davis v. Hareford*, 156 Ark. 67, 245 S. W. 833; *K. C. Sou. Ry. Co. v. Cockrell*, 169 Ark. 698, 277 S. W. 7.

If appellant's contention is correct, then in cases where the master and servant are sued for damages, based solely on the negligence of the servant, and where the servant may be relieved because of the contributory negligence of the injured party, and the master may be liable notwithstanding such contributory negligence, then it would be the duty of the court to direct the jury that they could not find against one without finding against both. If the injured party was guilty of contributory negligence and the master was liable because of the negligence of its servant, then the jury would be required either to find against the servant, when they knew that contributory negligence was a bar, and the verdict against him was unjust, or to find in favor of the corporation notwithstanding the negligence of its servant causing the injury, and notwithstanding he was entitled to recover, although guilty of contributory negligence. We do not think any court is committed to this doctrine.

We do not think it necessary to review the authorities cited by appellant extensively, because they are not applicable to the facts in this case, and there is no dispute about the rule announced by these authorities.

It is next contended by the appellant that the verdict is not supported by any evidence. The appellee testified that they had carried the meter along about 6 inches above the ground until they got to the platform; that the platform was about two feet high. When they got there,

Hudgins came and took hold of the bar on White's side, the side opposite to that of appellee; that Hudgins got hold of the bar and lifted it higher than the side appellee was on, throwing the meter on him, and he just had to stand there and hold it. When Hudgins came and took hold with White, they raised their end of the crowbar 3 or 4 inches higher, which caused the meter to slip over on appellee.

Appellee is corroborated by other witnesses, who testified that when Hudgins took hold he raised his end of the crowbar 2 or 3 inches higher. The witnesses corroborating him put it at from 1 to 3 inches. This testimony is undisputed.

It was a question for the jury to say whether, under the circumstances, taking hold of the crowbar with White and raising it up 3 or 4 inches when there was no one holding the other end of it except appellee, was negligence. The question was submitted to the jury under proper instructions, and we cannot say that there was no evidence to support their finding.

This court has many times held that when there is any substantial evidence to support the verdict of the jury, the verdict is conclusive here. It is true that the burden was upon appellee to show that his injury resulted from the negligence alleged in his complaint.

The master was not an insurer of his safety, but it is liable only for negligence, and the test as to whether it was guilty of negligence is whether Hudgins did what a person of ordinary prudence would have done under the circumstances.

The jury had a right to believe that Hudgins took hold of the bar with White, knowing that the other end of the bar was held by appellee alone, knowing that the meter was very heavy, and, without notice or warning of any kind, lifted the end of the crowbar from 1 to 4 inches, causing the injury to appellee. There is no presumption of the master's negligence, but we think there is substantial evidence to support the verdict of the jury that Hudgins was guilty of negligence.

The rule is that where fair-minded men might differ honestly as to the conclusion to be drawn from the facts, either controverted or uncontroverted, the question should go to the jury, and it is the province of the jury to pass on the weight of the evidence and the credibility of the witnesses, and, even if it appears that the verdict is contrary to the preponderance of the testimony, this furnishes no ground for reversal. *Armour & Co.* v. *Rose,* 183 Ark. 413, 36 S. W. (2d) 70; *Ark. P. & L. Co.* v. *Cates,* 180 Ark. 1003, 24 S. W. (2d) 846; *Hyatt* v. *Wiggins,* 178 Ark. 1085, 13 S. W. (2d) 301; *Mo. Pac. Rd. Co.* v. *Juneau,* 178 Ark. 417, 10 S. W. (2d) 867; *S. W. Bell Tel. Co.* v. *McAdoo,* 178 Ark. 411, 10 S. W. (2d) 503; *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 499.

It is next contended that the court erred in permitting the introduction in evidence of the drawing of the meter prepared and introduced by witness Thompson. We do not think there was any error in permitting the introduction of the drawing, and no prejudice could possibly have resulted from its introduction. The evident intention was to give a representation of the meter which could not otherwise be as conveniently shown or described by the witness. *St. L. S. F. R. Co.* v. *Horn,* 168 Ark. 200, 269 S. W. 576; *Harrelson* v. *Eureka Springs Elec. Co.,* 121 Ark. 269, 181 S. W. 922; *Sellers* v. *State,* 91 Ark. 175, 120 S. W. 840.

It is next contended by appellant that the court erred in permitting witness Dr. W. H. Simmons to answer a hypothetical question. After the appellant had objected because it stated that the hypothetical question did not take into consideration some of the facts, the court held that there were other things proper to be stated, and those things were stated, and witness permitted to answer the question. The hypothetical question mentioned the material facts, and then asked the doctor, assuming those things to be true, what, in his opinion, caused the conditions as he found them. The doctor stated in answer to the question that, considering the man's position, when a strain is suddenly thrown on him, it might be very

slight and still cause hernia, such as was found in appel-lee; that it depended somewhat upon the position he was in. To say exactly this particular strain was enough ordinarily, he said he did not know but he said that if he had a history that had any kind of a strain and immediately felt pain and became nauseated and had cold sweat, he would say the injury was the cause of the trouble.

We do not think there was any error in permitting the hypothetical question and permitting the doctor to answer it. See *Taylor* v. *McClintock*, 87 Ark. 294, 112 S. W. 405; *Ince* v. *State*, 77 Ark. 429, 93 S. W. 65; *St. L. I. M. & S. Ry. Co.* v. *Hook*, 83 Ark. 589, 104 S. W. 217.

Appellant next contends that the court erred in giving appellee's instruction No. 6. Instruction No. 6 is as follows: "You are instructed that if you find from the evidence that the plaintiff, Oscar Senn, while working for the defendant in moving and carrying by means of hand sticks a large and heavy meter from a truck on a pipe line where it was to be installed, the defendant, Mississippi River Fuel Corporation, carelessly and negligently and without notice to the plaintiff, grabbed or suddenly took hold of the end of the hand stick opposite where plaintiff was working and suddenly and carelessly and negligently and without notice or warning to plaintiff, jerked up or raised the end of the hand stick opposite to that held by plaintiff and thereby caused the meter to roll and turn and threw the weight of the meter on the plaintiff and placed upon him the burden of holding same, if you find it was negligence to do so, and his injuries, if any, were caused solely by the acts of said R. R. Hudgins, then your verdict should be for the plaintiff and against the defendant."

The objection to this instruction was general, no specific objection being made, and the instruction was not inherently wrong. If appellant thought it was wrong for the reasons now urged, it was its duty to make specific objections to the instructions.

We have carefully examined all of the instructions, and, when considered as a whole, they furnished a correct guide to the jury.

It is next contended that the court was without jurisdiction to render judgment against the appellant. Suit was filed in Drew County, Arkansas, and summons directed to the sheriff of Pulaski County, Arkansas, and it was returned duly served. The summons was issued May 10, 1930, and returned served by the sheriff of Pulaski County on May 14, 1930. On September 8, summons was issued to the sheriff of Pulaski County and returned September 15, showing it had been served. But on September 8, a summons was issued against the appellant and R. R. Hudgins, to the sheriff of Drew County, returned September 9, 1930.

The appellant is a foreign corporation, and § 1152 of Crawford & Moses' Digest, provides that foreign or domestic corporations who maintain in any county of this State a branch office or other place of business, are subject to suits, etc.

Evidence was taken showing that appellant had a place of business at Wilmar, Drew County, and this place of business was in charge of J. C. Lemons. Evidence was taken by the court on this question, and this evidence shows that the appellant had purchased several acres of land, built a warehouse, kept supplies there, and that Lemons, on whom the service was had, was in charge of the warehouse and in charge of the maintenance.

Several witnesses testified and Lemon testified that he was foreman of Division No. 2, and, if it was necessary, he would have the freight bills in his warehouse at Wilmar; that he was in charge of the job, was in charge of the construction of the meter platform in a way, and in charge of everything being built in that division.

We think there was ample evidence to establish the fact that the appellant maintained a branch office and place of business at Wilmar, and that Lemon was in charge of it. This being true, the service on Lemon at

Wilmar was sufficient. *Ramey* v. *Baker,* 182 Ark. 1043, 34 S. W. (2d) 461; *Ark. P. & L. Co.* v. *Hoover,* 182 Ark. 1065, 34 S. W. (2d) 464.

It is next contended that the verdict of the jury was excessive. The verdict was for $10,500. The evidence shows that appellee was 27 years of age, made his living by farming mostly, was in good health before the injury, weighed 165 to 175 pounds, and according to his testimony was sound physically, and could do as much work as any other man of that size. He testified that there was nothing wrong with his abdomen before the injury. His expectancy was 37 years. He has been unable to work at anything that requires lifting or physical exertion. He is compelled to wear across his lower abdomen a piece of cloth, something like a truss.

The doctors examined him, operated on him, and Dr. Simmons testified they decided he had a rupture that was strangulated and had developed peritonitis from it. This doctor testified that the operation was to relieve that condition, and in his opinion he would have died if he had not been operated on.

There is no dispute in the evidence that he had to have an operation, and that since the injury he has not been able to do the kind of work he did before his injury.

If the injury to appellee was caused in the manner that he claims it was and is as severe as the evidence shows it to be, the amount found by the injury is not excessive.

We have very carefully examined all of the evidence and the instructions given by the court, and have reached the conclusion that there is no error in the record.

The judgment is therefore affirmed.

SMITH, J., (dissenting). The relevancy of the discussion of the right of an injured servant to recover against one or more of the joint tort-feasors who have injured him— under the undisputed testimony in this case —is not apparent. The master has been held liable in this case, not as a joint tort-feasor, but under the doc-

trine of "respondeat superior." Cooley on Torts, (3rd ed.) page 254.

It is necessary to strip this case of its superfluities in order to ascertain the applicable principles of the law of master and servant which should be applied in its solution and decision.

It is true, as stated, that the answer alleged that the injured servant—the plaintiff—was guilty of contributory negligence, and that his injury had resulted from a risk which he had assumed. These pleas are so usual in all ordinary personal injury cases that the lawyer who failed to allege them would himself be guilty of negligence. It is true also that instructions submitted these issues. Appellant having asked such instructions, it is settled law that no prejudicial error was committed in giving them, although they were abstract. One cannot complain that an abstract instruction was given at his request. But it is a wholly different proposition to say that either an allegation in a pleading or an abstract instruction can supply a total absence of evidence to prove an essential fact.

The majority say the jury may have found that the injured servant was guilty of contributory negligence and upon this finding applied the comparative negligence doctrine, and, in its application, excused Hudgins, the fellow-servant, against whom contributory negligence was an absolute defense, yet held the master liable, for the reason that contributory negligence was not an absolute defense in its favor and that, as against the master, the doctrine of comparative negligence applies.

But what are the undisputed facts? The plaintiff alleged no act of negligence against any one except Hudgins, and the majority say that "the judgment against appellant (the master) is for the negligence of its servant, Hudgins, alone." Although the master alleged plaintiff was guilty of contributory negligence, this fact was denied by the plaintiff, and not a scintilla of evidence was offered in support of it, and appellee's able

counsel solemnly asserts in his brief filed in this case and in the oral argument before us that plaintiff was not guilty of contributory negligence. I am unable to see why this statement should not, therefore, be accepted as an undisputed fact, and, if so accepted, the question of comparative negligence passes out of the case. Where only one person was negligent, there is no negligence to compare, and even an abstract instruction cannot supply a total absence of testimony. The discussion of the doctrine of comparative negligence, under the undisputed testimony in this case, is as much aside as is the discussion of the right to recover against one or more joint tort-feasors.

The majority opinion mentions the fact that the foreman was standing by while the meter was being put in place; but this fact adds no new issue. Even though the foreman had ordered Hudgins to assist in putting the meter in place, it is not contended that he gave any directions as to the manner in which this simple duty should be performed, and there is no allegation or issue that Hudgins was known to be a careless or incompetent servant. Certainly, there was no negligence in ordering Hudgins to assist. His assistance meant only the presence and participation of another servant in placing the heavy meter in the desired position. Had Hudgins, while standing by and available, not assisted, the contention might have been made that the employees were ordered to perform a duty without sufficient assistance. Ordering Hudgins to assist could only fix his status as an employee, and not a volunteer, and the case presents no such issue.

The quotation in the majority opinion from 39 C. J. page 1269, affords no support to the conclusions reached. I have placed in italics the portion of the quotation which destroys its application to the facts of this case. As thus italicized it reads: "Under comparative negligence rule, where, in an action for negligence against a corporation and certain of its employees, there is a plea

of contributory negligence on the part of defendant *and evidence tending to establish it,* the jury may, if the evidence justifies it under the comparative negligence rule, find in favor of such employees and against the corporation.''

It thus appears that, to make the comparative negligence doctrine apply so that the master may be held liable for the negligence of his servant and the servant himself excused, there must, not only be a plea of contributory negligence, but *"evidence tending to establish it,"* and this necessity of testimony to present the issue cannot be supplied by abstract instructions. It would be a new doctrine, and one which I think the majority do not intend to announce, to say that an instruction which merely declares the law applicable to a particular state of facts can supply the necessity of proving those facts.

The case of *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468, was a well-considered case, and I do not understand that the majority intend to impair its authority. They have quoted the quotation appearing and approved in that case taken from the case of *Bradley* v. *Rosenthal,* 154 Cal. 420, but, in my opinion, they have not applied the rule there approved to the facts of this case.

The principle applied in the *Patterson* v. *Risher, supra,* case is that, while the master is responsible for the negligence of his servant, and must respond in damages for such negligence, yet, where the sole claim for damages against the master is that the servant's negligence inflicted the injury and caused the damage, a finding that the servant was not negligent necessarily discharges the master, because, if the servant was not negligent, then there is nothing for which the master should respond. Here we have not only an entire absence of testimony that the plaintiff was guilty of contributory negligence, but we have the contention of his able counsel made before us that he was not guilty of contributory negligence. There is therefore no negligence to com-

pare, and the doctrine of comparative negligence is unavailing.

There are certain exceptions to the rule announced in *Patterson* v. *Risher,* but they are more apparent than real. For instance, in the case of *Davis* v. *Hareford,* 156 Ark. 67, 245 S. W. 833. Without questioning the law as declared in *Patterson* v. *Risher,* we distinguished it from the case of *Davis* v. *Hareford,* and the distinction was just this: The Davis case was a suit for damages against both a railroad company and its engineer, whose negligence was alleged to have caused the plaintiff's injury. There was a verdict against the railroad company and in favor of the engineer, and we said the verdict was not inconsistent, because there was a statutory presumption of negligence against the railroad company, which the jury might have found was not overcome, whereas there was no such presumption against the engineer, and the finding may have been made in that case that the statutory presumption against the railroad company was not overcome, whereas, as against the engineer, the testimony might not have been sufficient unaided by that presumption, to establish negligence on the part of the engineer.

The majority say, in effect, that this principle may have been applied in the instant case, inasmuch, as against the master, the doctrine of comparative negligence applied, whereas, as against the servant Hudgins, contributory negligence was an absolute defense. In other words, the jury might have found that the plaintiff was guilty of some negligence contributing to his injury, and for this reason his right to recover was defeated as against Hudgins, whereas, as against the master, a corporation, the right to recover would not have been defeated unless the negligence of the plaintiff was equal to or greater than that of Hudgins.

But it may again be answered that this theory has no place in this case, for the reason that the plaintiff denied at the trial and now denies in his brief on this

appeal that he was guilty of any negligence whatsoever, and there is not a particle of testimony in the record that he was guilty of the slightest negligence. Certainly he should be bound, if not by his contention at the trial, then by his solemn admission before us.

The sole ground upon which liability has been asserted against the defendant corporation is that Hudgins was negligent, and that this negligence was the sole cause of the plaintiff's injury, and as the jury has found that Hudgins was not guilty of negligence, and as appellee insists that he, too, was not negligent, the doctrine of the Risher case applies, and in our opinion therefore the judgment against the defendant corporation should conform to the jury's finding, and if this is done the judgment against the master should be reversed and the case dismissed.

We therefore respectfully dissent from what we regard as the inconsistency of holding the corporation liable when Hudgins has been found by the verdict of the jury not to have been guilty of negligence.

I am authorized to say that Mr. Justice McHANEY concurs in the views here expressed.