Riggs *v.* Clay County Burial Association.

4-4333

Opinion delivered July 13, 1936.

*W. J. Schoonover* and *G. B. Oliver, Jr.*, for appellant.
*O. T. Ward,* for appellee.

Smith, J. The Clay County Burial Association was sued by one of its members in the Western District of Clay county, and a motion was sustained to quash the service of summons, upon the ground that the suit could not be maintained in that district of the county, and this appeal is from that order.

The articles of association of the defendant, hereinafter referred to as the association, which were offered in evidence upon the hearing of the motion to quash the service, recite that "the corporation shall be located in the town of Rector, Arkansas (branch in the town of Piggott, Arkansas)." These articles also recite "that the purpose of the corporation is and shall be the furnishing of funeral or burial benefits to the members of said association." There are five classes of membership, the highest being Class "AA," whose members are entitled to a funeral costing $300. Other classes are awarded funeral services at lower costs, the lowest being Class "D," whose deceased members are given funeral services costing $60. These sums are not paid to the families of the members who die, but the association buries the deceased members in a manner costing not more than the sums allotted to the class to which the deceased members belonged.

The expenses of the funerals are paid by assessments levied against the surviving members of the classes to which the deceased members belonged. The association was organized and is operated by W. H. Irby, who was its secretary and treasurer. He owned and operated what he called funeral parlors at Rector and Piggott, in the Eastern District of Clay county, and at Corning, in the Western District of that county, and testified that he "had been designated funeral director to furnish the benefits for the Clay County Burial Association." If he did not bury a deceased member he employed some other undertaker to do so. The profits derived from these services appear to have been Irby's only compensation.

Irby was the only witness who testified on the hearing of the motion to quash service of summons, and his testimony, in addition to the facts above recited, was to the following effect. He was the active manager. The offices of the association are at Rector, although he maintained funeral parlors in Rector, Piggott and Corning. The assessments are payable to him as treasurer, and receipts therefor are issued in his name as treasurer, either by himself or his representatives in charge of the parlors at Rector, Piggott and Corning. There are between eight and ten thousand members of the association in the Western District of Clay county. Notices of assessments recited that assessments may be paid at Rector, Piggott or Corning, as the members preferred. These notices of assessments contained the names of the members who had been buried by the association, and whose deaths had made the assessments necessary. This arrangement for the payment of assessments is for the convenience of the members. About twenty-five hundred members paid at Corning. He furnished blank receipt books, which are kept at the undertaking parlors in Corning for this purpose. The parlors at Corning is in charge of Wallace Edmonston and Miss Mary Hull, both of whom had authority to collect assessments and to issue receipts therefor, signing the name of Irby as treasurer. Both Edmonston and Miss Hull worked for him. Neither is employed by the association. He pays them

personally. The association pays them nothing. Miss Hull keeps the records and makes report to him of assessments collected at Corning. There are no other records kept at Corning. The association's records are kept at Rector. Miss Hull and Edmonston are his employees. ''He (Edmonston) is a funeral director, and does funeral work. Miss Hull works for me and stays there (at Corning) when Mr. Edmonston is out to take calls for the funeral home.''

The summons (the service of which was quashed by the order of the court) was served upon Edmonston in Corning, which is the seat of the court for the Western District of Clay county.

To affirm the action of the court below it is pointed out that the act establishing separate courts in the county of Clay (Act XIV, Acts 1881, page 21) provides that the jurisdiction of these courts shall be as separate and distinct as if they were held in different constitutional counties, and it is specifically provided ''that no citizen or resident of the Eastern District shall be liable to be sued in said Western District; nor any citizen or resident of the Western District shall be liable to be sued in the said Eastern District in any action whatever.''

Treating these districts, therefore, as separate counties for the purpose of ascertaining whether the courts of the Western District have jurisdiction of a cause of action against the association, whose domicile is in the Eastern District of the county, it becomes necessary to decide whether that jurisdiction is conferred on the courts of the Western District under the provisions of § 1152, Crawford & Moses' Digest, as applied to the facts hereinbefore recited. This section reads as follows: ''Any and all foreign and domestic corporations who keep or maintain in any of the counties of this State a branch office or other place of business shall be subject to suits in any of said counties where said corporations so keeps or maintains such office or place of business, and service of summons or other process of law from any of the said courts held in said counties upon the agent, servant or employee in charge of said office or place of business shall be deemed good and sufficient service upon

said corporations and shall be sufficient to give jurisdiction to any of the courts of this State held in the counties where said service of summons or other process of law is had upon said agent, servant or employee of said corporations."

It is undisputed that Edmonston kept and maintained an office or other place of business in the Western District of Clay county. The question is whether he kept or maintained such office or place of business as the agent of the association for the transaction of the business of the association.

Numerous cases have considered and construed § 1152, *supra,* in determining whether a branch office or other place of business was maintained by a corporation, either foreign or domestic, within the meaning of this statute so as to confer jurisdiction upon the courts of the county in which such branch office or other place of business was located. Among others the following: *Fort Smith Lbr. Co.* v. *Shackleford,* 115 Ark. 272, 171 S. W. 99; *Terry Dairy Co.* v. *Parker,* 144 Ark. 401, 223 S. W. 6; *Arkansas Power & Light Co.* v. *Hoover,* 182 Ark. 1065, 34 S. W. (2d) 464; *Mississippi River Fuel Corporation* v. *Senn,* 184 Ark. 554, 43 S. W. (2d) 255; *Bradley Lbr. Co.* v. *Henry,* 189 Ark. 482, 73 S. W. (2d) 157; *Berryman* v. *Cudahy Packing Co.,* 189 Ark. 1152, 76 S. W. (2d) 956; *Chapman & Dewey Lbr. Co.* v. *Means,* 191 Ark. 1066, 88 S. W. (2d) 829; *Chevrolet Motor Co.* v. *Landers Chevrolet Co.,* 183 Ark. 669, 37 S. W. (2d) 873.

The association relies upon the Chevrolet Motor Company case, last cited, as upholding the order and judgment of the court below to the effect that it did not maintain a branch office or other place of business in the Western District of Clay county, and could not, therefore, be sued in the courts of that district.

After reviewing the facts recited in that opinion the court there said that the corporation did not keep or maintain a branch office or other place of business in the county in which it had been sued. Here, the facts are essentially different from those in the motor company case, *supra.* There appears to be no question that Edmondston and Miss Hull were the agents of the asso-

ciation. They were constantly engaged in the collection of the assessments due it, the source from which the association derived its income. Their authority to perform this service is not questioned. They collected thousands of assessments each year, and issued binding receipts therefor, the validity of none of which is questioned. The ownership of the building in which this was done is not the controlling question. *Ramey* v. *Baker*, 182 Ark. 1043, 34 S. W. (2d) 461. Its use for this purpose was permitted and authorized by the secretary and treasurer of the association, who was its managing officer. Members not only went to this place of business to pay their dues, but other members remitted their dues by mail, which were received and accepted by the association's agents, acting with full authority.

It is argued that Miss Hull and Edmonston were not the agents of the association, because they were not paid for their services by the association, but were paid by Irby. There are two answers to this contention. The first is that, if Miss Hull and Edmonston were in fact agents of the association, it is immaterial whether they received any compensation from it for their services. Section 1152, Crawford & Moses' Digest, copied above, contains no such requirement. Their relation to the association must be determined by a consideration of the duties they were authorized to perform for it and in its behalf, rather than by a consideration of their compensation for the performance of these duties. They made collections of assessments, and issued binding receipts therefor, and made remittances thereof from a fixed and established place of business which was controlled by the association's general manager. Nor does it appear that these services were rendered without compensation. Irby paid them immediately, but the association paid ultimately. His contract with the association required him to bury its members, and he was paid in each instance the amount of the deceased member's burial benefits. Presumptively he received from the association in this manner remuneration for the expense which he incurred in its behalf in enabling it to perform the functions of its articles of association. However, he had clothed Edmons-

ton, upon whom the service was had, and who was in charge of the place of business in Corning, with certain powers, the possession and discharge of which constituted Edmonston as the agent of the principal in whose name and for whose benefit he acted.

We conclude, therefore, that Edmonston was an agent in charge of the branch office or other place of business in Corning, and service upon him was sufficient, therefore, to confer jurisdiction upon the courts of the Western District of Clay county, in which district Corning is situated.

The judgment of the court below is therefore reversed, and the cause will be remanded with directions to overrule the motion to quash the service of the summons.