Missouri Pacific Railroad Company v. Morrison.

4-2752

Opinion delivered December 19, 1932.

690

*Edward J. White, R. E. Wiley* and *Richard M. Ryan,* for appellant.

*John L. McClellan* and *Tom J. Terral,* for appellee.

SMITH, J. Appellee recovered judgment in the sum of $30,000, to compensate an injury sustained by him while riding as a passenger on one of appellant's passenger trains. It was alleged that the train made a sudden stop, which threw appellee off his feet as he was returning to his seat from the toilet, throwing him across the arm of a seat and severely injuring him. The railroad company defended upon the ground that the train did not make any violent or unusual or negligent stop, and denied that appellee had sustained any serious injury.

These questions of fact were submitted to the jury under instructions correctly declaring the law, and are concluded by the verdict of the jury in appellee's favor.

There was a motion for a new trial upon the ground of newly discovered evidence. But, without reviewing this testimony and the circumstances of its production,

we announce our conclusion to be that this testimony appears to be cumulative of other testimony offered at the trial which tended to corroborate certain testimony offered by appellant or to contradict other testimony offered by appellee, and the rule is well settled that new trials are not granted for newly discovered evidence that is merely cumulative. *Forsgren* v. *Massey,* 185 Ark. 90, 46 S. W. (2d) 20.

It is essential also that due diligence be shown in discovering the new testimony, and the circumstances of this case are such that we would not hold that the trial court had abused its discretion in refusing a new trial for the newly discovered evidence, on account of the lack of proper diligence in the discovery and production of this testimony. *Forsgren* v. *Massey, supra.*

The engineer in charge of the locomotive pulling the train on which appellee was injured was made a party defendant, but the jury returned a verdict in his favor. It is very earnestly insisted, for the reversal of the judgment against the railroad company that, inasmuch as a verdict was returned in favor of its employee whose negligence is said to have occasioned the injury, a verdict should have been directed in its favor after the jury had found in favor of the employee.

This question was considered by the court in the cases of *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468; *Davis* v. *Hareford,* 156 Ark. 67, 245 S. W. 833; and *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. (2d) 255.

The effect of those decisions is that it does not necessarily follow that a corporation is discharged from liability for an injury occasioned by the negligence of its employee because a jury refused to assess damages against that employee when sued in conjunction with the employer. The theory is that the doctrine of comparative negligence obtains in the suit against a railroad company or other corporation, whereas contributory negligence is an absolute defense to the suit against the servant or employee himself.

It is true also, as is pointed out in the cases above cited, that, in suits against railroad companies for damages arising out of the operation of trains, the injured party has the benefit of the statutory presumption of negligence which arises upon proof being made that one was injured by the operation of a train, whereas there is no such presumption against the servant or employee himself.

These distinctions are fully discussed in the opinions cited and need not be further reviewed. It will suffice to say that the instructions given in the trial of the cause in the court below were correct declarations of the law.

We find no error in the record except that, in our opinion, the judgment was for an excessive amount, and this error may be cured by a remittitur, unless appellee shall elect to have the cause remanded for a new trial.

The testimony on the part of the railroad company was to the effect that appellee could not have sustained any serious injury on the train, as there was no such sudden stopping of the train as to have thrown him down violently, and that the present physical condition of appellee is due to injuries received both before and subsequent to the injury for the compensation of which he here sues. But we must view the testimony on this branch of the case, as well as upon the question of negligence itself, in the light most favorable to appellee, and, when so viewed, the facts may be summarized as follows: Appellee was thrown very violently across a seat. He thought at the time that his back was broken and so stated to the porter upon leaving the train. He was able to get home unaccompanied after reaching Little Rock, his destination, about 11 p. m. He stopped on his way home for a cup of coffee and a sandwich, although he was suffering greatly. After reaching home he was confined to his bed for twenty-seven days. He requested the railroad company to send its claim agent and a physician to see him. X-ray pictures were later made at the hospital of the railroad company in Little Rock, which were offered in

evidence. Appellee went to Hot Springs after his injury and made that place his headquarters for some months. He was not examined for purposes of treatment by any physician in that city. He was examined by Doctors H. E. Ruff and A. G. McGill, both of Little Rock. These doctors expressed the opinion that appellee had been severely injured. Dr. McGill was the principal witness for appellee on the questions of the extent and character of the injury. He testified that he made X-ray pictures of appellee, but he had made them upon the order of the Brotherhood of Railway Trainmen, and, for that reason, had not brought them to the trial, which did not occur in Little Rock the place where witness maintained his office. Dr. McGill testified as follows: "Q. Aside from whatever the X-ray may have shown, tell the jury what was the result of your physical examination you made, what you learned from that. A. Well, he was swollen over the spine, and there was some swelling over his twelfth rib on the left side, and there was a tender spot on his spine in the upper lumbar region on the other side, on the right side. Q. Tell the jury whether or not from the physical examination, aside from the X-ray, if you could see he was permanently injured. A. I thought he was. Q. How long and in what way will he be affected by this condition? A. Well, he will suffer from pain, and he will have a weak back and stiff back and always be nervous. Q. In what way are the nerves affected? A. From the shock of the injury and possibly from the inflammatory products that were thrown out at the seat of his injuries."

Appellee testified that his pain was so constant and severe that he had difficulty sleeping, and that he was compelled to leave his bed at all hours of the night in order to obtain relief. When asked how he suffered, he answered: "Well, with pain and my nerves, and when I walk a little I will get light headed, and if I get in an argument my nerves are completely gone."

The clerk of the hotel where appellee resided in Hot Springs testified that he had frequently seen appellee at various hours of the night walking around the hotel lobby.

Appellee testified that he could not walk except with the aid of a cane or a crutch, but he did walk with their aid.

Appellee was 47 years old at the time of his injury. He had been a railroad switchman for twenty-four years, from which employment he earned from one hundred to two hundred dollars per month, but he was not thus employed at the time of his injury. After leaving the railroad service, he wrote insurance, and in one month earned over $500. His earnings did not average this amount. Upon this question he testified as follows: ''Q. How much did it amount to when you were selling insurance? A. One month I made $560. I was the third out of 560 agents of the United States; they put on a contest for cash premiums of $100 for the man that sells the most stuff, and I sold $5,510 of the premium business in 1924.'' It was not explained what portion of the $5,510 premiums were paid appellee as his compensation. He testified that since his injury he had been unable to obtain employment or to render any service by which he could earn money.

Certain X-ray pictures were offered in evidence by the railroad company, which, it is said, show no injury to appellee's spine or vertebrae, these being the pictures taken at the railroad company's hospital. But it is answered that these pictures do not show the vertebrae which were injured according to the testimony of appellee.

We must assume, in view of the testimony on appellee's behalf and the verdict of the jury, that appellee has sustained a serious and a permanent injury, and that the fall sustained on the train is the cause thereof. But, even so, appellee is not a paralyzed helpless man. Dr. McGill stated: ''A. Well, he will suffer from pain, and he will have a weak back and a stiff back, and always be nervous.'' In answer to the question, ''When, in your opinion, doctor, will he ever recover?'' Dr. Ruff said: ''It is my opinion that he will never be entirely well.''

Viewing the testimony in the light most favorable to appellee, we have concluded that a judgment for any sum above $15,000 will be excessive, and that it was preju-

dicial error to render judgment for a larger sum, but the error may be cured by reducing the judgment to that amount, and it is so ordered unless appellee shall elect, within fifteen days, to have the cause remanded for a new trial.