AMERICAN COMPANY OF ARKANSAS *v.* BAKER.

4-3013

Opinion delivered May 22, 1933.

*Buzbee, Pugh & Harrison,* for appellant.

*Golden & Golden* and *Williamson & Williamson,* for appellee.

BUTLER, J. The defendant (appellant) is a corporation. Plaintiff (appellee) was its servant and, in the discharge of his duties as such, was injured. The negligence of a fellow-servant concurring with that of another was charged as the proximate cause of the injury. An action was brought by appellee for damages against the fellow-servant and the corporation which resulted in a verdict for the defendant servant and against the employer, from which the latter has appealed.

1. On the return of the verdict into court, both the appellee and the appellant moved for a judgment, notwithstanding the verdict. The appellee moved for judgment in his favor against the defendant, Mitchell Godwin, his fellow-servant, and the appellant moved for a judgment in its favor. The overruling of appellant's motion is one of the principal grounds assigned for reversal of this case, the appellant basing its position on the general rule announced in the case of *Patterson* v. *Risher,* 143 Ark. 376, 221 S. W. 468, as follows: "Where a recovery is sought in an action against a principal and his agent based upon the act or omission of the agent which the principal did not direct and in which he did not participate and for which his responsibility is simply that cast upon him by law by reason of his relationship to the agent, a judgment in favor of and exonerating the agent generally *ex proprio vigore* relieves the principal of responsibility, and may be availed of by the principal for that purpose."

Appellant recognizes that there is an exception to this rule where the liability of the master and the servant is governed by different rules, as pointed out in the recent cases of *Mississippi River Fuel Corp.* v. *Senn,* 184 Ark. 554, 43 S. W. (2d) 255, and *Mo. Pac. Rd. Co.* v. *Morrison,* 186 Ark. 689, 55 S. W. (2d) 993, but contends that the exception cannot be applied in the case at bar for the reason that the court instructed the jury that contributory negligence was a complete defense as to both defendants. The instruction referred to is instruction No. 8 and was given by the court over the objection of the appellee and at the request of the appellant. The declaration of the court correctly stated the general rule, but failed to take into consideration the exception created by § 7145, Crawford & Moses' Digest. That section is as follows: ''In all actions hereafter brought against any such corporation under or by virtue of any of the provisions of this act to recover damages for personal injuries [to an employee, or where such injuries] (a) have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury (and not by the court) in proportion to the amount of negligence attributable to such employee; provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such corporation of any statute enacted for the safety of employees contributed to the injury or death of such employee.''

Because of the above statute a different defense obtains as to the fellow-servant and the corporation. As to the former, the contributory negligence of the plaintiff, if any, remains a complete defense, whereas this is not so as to the corporation; as to the latter, the doctrine of comparative negligence established by the statute applies, and the rule announced in the Senn and Morrison cases, *supra,* therefore applies to the instant case. ''It will therefore be seen that it might be perfectly proper to find a verdict in favor of the employee charged with negligence and against the master, because appellee would be entitled to a verdict against the corporation,

notwithstanding his contributory negligence, but would not be entitled to a verdict against the servant, no matter how guilty he may have been of negligence, if the injured party was guilty of any contributory negligence." *Miss. River Fuel Corp. v. Senn, supra.*

The appellant argues that, because of instruction No. 8, it cannot be said that the jury failed to find against the fellow-servant, Godwin, because of contributory negligence of plaintiff, for under the instruction of the court, whether right or wrong, if the jury found contributory negligence on the part of the plaintiff, it was its duty to return a verdict in favor of both defendants. This argument is untenable for the reason that the court was drawn into error at the suggestion of the appellant, and it is therefore in no position to take advantage of it, and the court correctly overruled its motion for judgment notwithstanding the verdict.

2. The second ground urged for reversal of the judgment and dismissal of the case is based upon the refusal of the court to direct a verdict because of failure of the evidence to justify the submission of the case to the jury. The appellant argues with great force that the testimony fails to establish any negligent act on the part of Godwin, the fellow-servant, which was the proximate cause of the injury to the appellee.

That part of the evidence necessary for an understanding of this issue establishes the following facts; appellee was a truck driver, and at the time of the injury was conveying a truck loaded with merchandise of the appellant along Highway No. 4 traveling toward Warren from Monticello. At a point between these two towns a considerable portion of the highway was covered with water, and in attempting to pass through this the truck driven by the appellee became mired and could not be driven further. He got out of the truck and waded through the water toward the west until he emerged from it. From this point the ground gradually ascended for about 500 feet to what the witnesses called "the brow of the hill." Between the edge of the water and this hill another truck of the appellant was standing which had been driven from Warren by Godwin and in which an-

other employee of the appellant, a Mr. Caraway, was riding. When they discovered the predicament of the truck driven by the appellee, they went back to where their truck was standing, then headed toward Warren, and turned it around and drove downward to near the edge of the water, their purpose being to take appellee with them and return to the mired truck and remove a part of its load so that it might be driven out. When Godwin's truck was near the water's edge, it was stopped for the purpose of allowing appellee to get on. Near the place where the truck stopped, a car driven by Mr. Beard was parked on the side of the highway. As appellee was preparing to, or in the act of, boarding Godwin's truck, a Ford car driven at a rapid rate of speed by a negro man attempted to pass between the truck and Beard's car, striking the appellee and inflicting upon him serious injuries. As to how and when the negro's car approached and for what length of time the truck had been standing, the evidence is in conflict.

Two disinterested witnesses, Mr. Triber Beard and Mr. R. L. Ragar, who were present at the time of the accident, testified that the truck driven by Godwin approached the water's edge and stopped before the negro appeared in his car over the brow of the hill some 540 feet away and at which point the truck could be plainly seen; that, without stopping or slackening his speed, the negro drove at a very fast rate—estimated by the witnesses to be between 35 and 50 miles an hour—between the standing truck and the car parked on the edge of the highway, glancing the door of Beard's Ford and without touching the truck. As to the relative position of Godwin's truck and Beard's car, these witnesses stated that there was ample room for the negro's car to pass between them, the back end of the truck which had been stopped about the middle of the highway being anywhere from ten to twenty-five feet from the front end of Beard's car.

The appellee testified that the truck driven by Godwin came rapidly down the hill and suddenly stopped with the rear end about even with the front end of the parked Ford, and that Godwin did not hold out his arm

or give any signal that he was about to stop the truck; that the truck had no rear-view mirror on it and just as it came to a stop—almost at the same instant—the negro came right in behind the truck striking the side of the truck and scraping the side of the car. At the time the witness was standing in front of the Ford car which prevented him from seeing the car driven by the negro until too late to avoid being struck by it; that the first time he saw the negro's car it had hit the Ford car and the truck about six feet from him. He estimated the time between the stopping of the truck driven by Godwin and the collision as not over three seconds.

It appears to us that the negligence, if any, was the sudden stopping of the truck without giving any signal or warning of that intention to one who might be driving closely behind it. The circumstances of this case are peculiar, but we are unable to say as a matter of law that there is no substantial evidence of any negligent act on the part of Godwin, the fellow-servant of the appellee. This court has no power to vacate a verdict of the jury or the judgment based thereon on the weight of the evidence, but we are obliged on appeal to view the evidence in the light most favorable to the appellee, giving to it every reasonable inference in support of the verdict, and, however much we may think the evidence preponderates against the finding of the jury, we may not interfere. This court has repeatedly pointed out that this is a duty and power resting solely with the trial judge to be exercised whenever, in his opinion, the verdict is against the clear preponderance of the evidence, and on that question his judgment is conclusive if there is any substantial conflict therein. *Taylor* v. *Grant Lumber Co.,* 94 Ark. 566, 127 S. W. 962; *McDonnell* v. *St. L. Sw. Ry. Co.,* 98 Ark. 334, 135 S. W. 925; *Blackwood* v. *Eads,* 98 Ark. 304, 135 S. W. 922; *McElroy* v. *Arkansas Valley Trust Co.,* 100 Ark. 596, 141 S. W. 196; *Johnson* v. *Mantooth,* 108 Ark. 99, 156 S. W. 448; *Wilhelm* v. *Collison,* 133 Ark. 166, 202 S. W. 28.

3. It is our opinion however that the case was submitted to the jury on the wrong theory. We think that the court correctly declared the law in instruction No.

9 by which the jury was told to disregard Godwin's failure to signal his intention to stop, etc., if it found the truck was stopped before the Ford driven by the negro came into view, but erred when, at the request of the defendant (appellant), it took from the jury the question of Godwin's negligence, if any, in suddenly stopping his truck without giving any signal of his intention to do so, if this was the proximate cause of the injury of appellee.

It was admitted that Godwin's truck stopped approximately in the center of the highway leaving less than fifteen feet of the main portion of the highway open for passing vehicles. In that state of the case, the court applied the statute▮ which makes it unlawful for any person to park or leave standing any vehicle upon any highway unless a clear an unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such vehicle be left for free passage of other vehicles, and in instruction No. 1 told the jury that if Godwin so left his truck he was guilty of obstructing the highway.

We are also of the opinion that under the facts in this case instruction No. 2 was abstract. In the statute upon which instruction No. 1 is grounded the expression ''or leave standing'' is nothing more than a legislative definition of the word ''park'' which precedes it. Both the word ''park'' and the expression ''or leave standing'' have been frequently defined by the courts and must be deemed to have been used by the Legislature as meaning something more than a mere temporary or momentary stopping on the road for a necessary purpose.

''Under the automobile statutes the term 'park' has been defined by the courts as meaning, in substance, the voluntary act of leaving a car on the main-traveled portion of the highway when not in use. It means something more than a mere temporary or momentary stoppage on the road for a necessary purpose. Whether or not a vehicle standing in the roadway is parked must be determined from all of the surrounding circumstances and the reason for the vehicle standing, and is usually

a question for the jury." Huddy, Ency. of Automobile Law, vol. 3-4, § 59, p. 104.

In the statute before us the Legislature makes it clear by the use of the words "or leave standing" that it did not intend to make the temporary stopping of a vehicle in the highway a violation of the law, for by this expression they meant something more than a temporary stopping in the road where a fifteen feet clearance is not given. Generally, it is a question for the jury to determine from all of the surrounding circumstances and from the reason for the vehicle stopping whether it violates the law against parking on the public highway.

In Oregon the statute prohibiting the parking of vehicles on the highway provides that "no vehicle shall be parked upon the main-traveled portion of the highways of this State, provided that this shall not apply to any vehicle so disabled as to prohibit the moving of the same." In construing that statute the Supreme Court of Oregon in the case of *Martin* v. *Oregon Stages,* 129 Or. 435, 277 Pac. 291, said: "The word 'park' as used in the statute has not been accurately defined. It cannot be precisely defined so as to apply the meaning of the Legislature to all cases. Whether or not a motor vehicle standing in the roadway is parked must be determined from all the surrounding circumstances and the reason for the vehicle standing."

Under a statute similar in its effect to ours, the Supreme Court of South Dakota, in the case of *Bruening* v. *Miller,* 57 S. D. 58, 230 N. W. 754, 758, held that leaving a tractor upon the highway while the operator procured gasoline was not parking under the statute. In the case of *Newell Contracting Co.* v. *Berry,* 223 Ala. 109, 134 So. 870, the court said: "Parking with reference to motor vehicles is a term used as meaning the permitting of motor vehicles to remain standing on a public highway or street; the voluntary act of leaving a vehicle on the highway when not in use, and to 'park' means something more than mere temporary or momentary stoppage on the road for a necessary purpose."

In *Village of Wonewoc* v. *Taubert,* 203 Wis. 73, 233 N. W. 755, the court defined the term "parking" as applied to automobiles as meaning not only the voluntary act of leaving a vehicle on the street unattended, but also to stopping on the highway though occupied and attended for a length of time inconsistent with the reasonable use of the streets or highways, considering the primary purpose for which they exist.

In the case of *Sahms* v. *Marcus,* 239 Mich. 682, 214 N. W. 969, cited by appellant, in applying its statute making it "unlawful to park a vehicle on the beaten track or paved surface of any highway, etc.," the Supreme Court held as a matter of law that the statute was not violated where a driver stopped his car for a moment to recover his wife's hat, explaining that there is a difference between stopping and parking; that the statute is aimed at vehicles unable to move under their own power and left standing and those which are able to move, but left standing without watchman or caretaker; the purpose of the act being to keep the improved highways open for travel and free from non-moving vehicles, but not to prohibit a temporary stop for a necessary reason.

In *Billingsly* v. *McCommick Transfer Co.,* 58 N. D. 913, 228 N. W. 424, a decision from the North Dakota court, in discussing the statute of that State regulating the use of the highways, the court held "that 'parking' means more than a momentary or temporary stopping— that is, it has an element of a purpose unconnected with the car itself and an intent to leave it there in a supposedly safe place while engaged in other business or pleasure." See also *Bowmaster* v. *Depree Co.,* 252 Mich. 505, 233 N. W. 395; *Dare* v. *Boss,* 111 Or. 190, 224 Pac. 646.

Several of the witnesses, including the negro whose negligence is undisputed, testified that the truck had just stopped as the negro appeared on the brow of the hill some 540 feet away, while the appellee placed the time the truck was standing before the accident at a shorter interval than the others, so in any view of the evidence it is apparent that the truck was not "parked or left stand-

ing" within the meaning of the statute, but momentarily for the purpose of affording appellee an opportunity to embark thereon that he might assist in the performance of a necessary work.

For the errors stated the judgment of the court below is reversed, and the cause remanded for a new trial.