HEALEY & ROTH *v.* BALMAT.

4-3500

Opinion delivered June 18, 1934.

*Fred A. Isgrig* and *Buzbee, Harrison, Buzbee & Wright,* for appellants.

*Donham & Fulk* and *Philip McNemer,* for appellee.

MEHAFFY, J. On the 14th day of November, 1931, the appellee, Louis Balmat, with two companions, Jack Reed and Stanley Price, between twelve and one o'clock, left

Little Rock in Balmat's car, a Chevrolet roadster to attend a football game in Pine Bluff. After eating supper, Balmat and his companions started back to Little Rock in Balmat's car with Jack Reed driving. At a point near Woodson, about fifteen miles from Little Rock, the car turned over and Reed was severely injured. Balmat and Price were not injured. Shortly after the car turned over, a man and woman in a Ford two-door sedan came along going to Little Rock and proposed to take Balmat and his party to Little Rock. It was decided, however, to leave Price in charge of the wrecked roadster and that Balmat would accompany Reed, the injured man, in the Ford sedan. The driver of the Ford then proceeded towards Little Rock with Reed and Balmat riding in the back seat. On arriving at Sweet Home, about five miles from Little Rock, Balmat had the driver of the Ford to stop his car while Balmat 'phoned for an ambulance to come out and meet the Ford car and take Reed to a hospital. Balmat called appellants, Healey & Roth. Balmat had formerly been in the employ of appellants, and had ridden on ambulances when responding to emergency calls. Appellee's 'phone call was received by Hugh Revely, an employee of appellants. Appellee told Revely that Reed had been severely injured and instructed him to come out and meet the Ford and take Reed to a hospital. In order that Revely might identify the car in which Reed was riding, appellee told him that the driver of the Ford would flash his lights as a signal when he saw the ambulance approaching. Balmat then resumed his place in the Ford, which proceeded towards Little Rock, and the driver of the Ford was told that the ambulance was coming out to meet them, and that he was to signal the ambulance by flashing the lights of the Ford when the ambulance came in sight. When the Ford reached a point near the Little Rock city limits he saw the ambulance approaching. He stopped his car on the east side of the highway, the right-hand side facing Little Rock, and began flashing his lights as a signal for the ambulance to stop and pick up the injured man. The ambulance pulled up and stopped on the west side of the

highway, which was the right-hand side facing Pine Bluff. When the ambulance came to a stop, the two left wheels were about five feet from the west edge of the pavement, the right front wheel was over on the west shoulder of the highway. As soon as the ambulance had stopped, the injured man got out of the Ford assisted by appellee, on the east side, walked around the rear end of the Ford, across the highway to a position at the rear of the ambulance. The driver of the ambulance and his assistant had in the meantime gotten out the ambulance cot and placed it on the pavement lengthwise of the highway, immediately back of the ambulance. The cot was about seven feet long, mounted on wheels and was about two feet above the surface of the highway. Reed lay down on the cot and appellee took a position on the highway at the rear of the cot, west of the center line of the highway and about twelve feet behind the ambulance. Elijah Jackson, a negro preacher, who lived near where the ambulance had stopped, appeared and took a position near appellee. The driver of the ambulance and his assistant were on opposite sides of the cot preparing to lift Reed into the ambulance when Elijah Jackson called, "Look out, white folks!" Some one shoved the cot upon which Reed was lying off the highway and everyone got to a place of safety except appellee who was struck by an automobile which had approached from the direction of Little Rock and was going towards Pine Bluff. The automobile was going at a rapid rate of speed and appellee was knocked down and severely injured, and, immediately after striking appellee, the automobile collided with the rear end of the ambulance and an explosion of gasoline followed, resulting in severely burning the face and head of appellee. The car which struck appellee was occupied by two young men and two young women, and was driven by Henry Blake.

This suit was begun on December 14, 1932, by appellee against appellants and Henry Blake, to recover damages for the injuries he had received. He alleged that the driver of the ambulance negligently stopped it and left it standing on the public highway in such a position

with reference to the automobile, which was parked on the opposite side of the highway, that traffic could not pass between the two vehicles.

Appellants filed answer, denying the material allegations of the complaint, denying that it was guilty of any negligence, and denying that the position of the ambulance was the proximate cause of appellee's being struck by the Blake automobile. Henry Blake filed separate answer. There was a trial and a verdict and judgment against Henry Blake and appellants for $8,000. Blake did not appeal. The appellants filed motion for new trial which was overruled, exceptions saved, and the case is here on appeal.

The rear light and dome light on the ambulance were burning.

Henry Blake testified that he was going about thirty miles an hour, it was misting rain, and when he approached the place of the accident he saw the Ford car standing on the east side of the highway and its lights were on and created a glare on the pavement which shone in his face, and he could not see the ambulance. When he discovered the ambulance, he put on the brake, but he could not go between the cars, and his front fender hit the ambulance but he did not remember hitting any person. He did not see the lights on the ambulance. When Blake's car hit the ambulance, it knocked it several feet. The two cars, the Ford and the ambulance, blocked the road to traffic, and, if the ambulance had gone a little further, there was an open space where it could have stopped, and there would have been room for traffic.

This was an emergency call by the ambulance, and the drivers of the ambulance were in a hurry to get the injured man to the hospital and paid no attention to the parking.

Appellants first contend that the court erred in refusing to direct a verdict in their favor. It is contended that the operator of the ambulance violated no traffic law and was guilty of no negligence. It is not contended

by appellee that the traffic law was violated, but the cause of action is based solely on the negligence of appellants in stopping the ambulance opposite a car which was already parked on the highway in such a manner as to block traffic.

Appellants call attention to *American Company of Arkansas* v. *Baker,* 187 Ark. 492, 60 S. W. (2d) 572. The court, however, said in that case: "It appears to us that the negligence, if any, was the sudden stopping of the truck without giving any signal or warning of that intention to one who might be driving closely behind it. \* \* \* This court has no power to vacate a verdict of the jury or the judgment based thereon on the weight of the evidence, but we are obliged on appeal to view the evidence in the light most favorable to the appellee, giving to it every reasonable inference in support of the verdict, and, however much we may think the evidence preponderates against the finding of the jury, we may not interfere. This court has repeatedly pointed out that this is a duty and power resting solely with the trial judge, to be exercised whenever in his opinion the verdict is against the clear preponderance of the evidence, and on that question his judgment is conclusive if there is any substantial conflict therein."

In the instant case, the undisputed proof shows that the ambulance was so parked with reference to the other car, which was already parked there, that it was impossible for vehicles to pass. The road was wet and slippery, and whether under the circumstances in this case the appellants were guilty of negligence in blocking traffic as they did when they were bound to know that other vehicles would be on the highway was a question for the jury, and, if there is any substantial evidence to sustain the verdict, we cannot set it aside, although we might think that the preponderance of the evidence showed that appellants were not guilty of any negligence. The jury might have found that there was ample space within a few feet of the place where the ambulance stopped where it could have been stopped without interfering with traffic.

Instruction No. 10 given by the court submits this question to the jury. It is true the ambulance was on the

highway at this place a very short time before it was struck by Blake's car, but the jury was justified in finding that it was not necessary to stop the ambulance for any length of time so as to obstruct traffic.

Appellants say that the ambulance was on an errand of mercy. It is true it was an emergency call, and it was endeavoring to get an injured person to the hospital as quickly as possible. This, however, did not relieve it from the consequences of its negligence, if it were guilty of negligence. One cannot, even on an errand of mercy or in an effort to relieve an injured person and remove him to a hospital, block the traffic in such a manner as to endanger others, especially when in a few feet of the place the ambulance might have been parked without any interference with the traffic.

Appellants contend that the ambulance had a superior right to the immediate use of the highway by virtue of the traffic regulations, but the traffic regulations did not give appellants any right to commit an act of negligence endangering others. Moreover, the court instructed the jury that an ambulance, when operated upon official business, has a superior right on the highway to other traffic so long as the operator does not exercise that right in an arbitrary manner, and in the same instruction told the jury that, if it found that the ambulance was blocking the highway but further found that in doing so said operator was not acting arbitrarily and in wilful disregard of the rights of other persons who might be using the highway in a proper manner but was acting as a person of ordinary prudence would act under similar circumstances, it would not be justified in finding against appellants.

It is next contended by appellants that the appellee was barred from recovery by his own negligence. The undisputed evidence shows that the cot was behind the ambulance, and that appellee was standing behind the cot when he was struck by the automobile. The court under proper instruction, submitted the question of appellee's contributory negligence to the jury, and the jury's finding on this question is conclusive here.

Appellants then contend that the stopping of the ambulance was not the proximate cause of the accident complained of. It was certainly not the sole cause. The undisputed proof shows that Blake was driving on the wet, slippery road at about thirty miles an hour, and he was unquestionably guilty of negligence, as the jury found, but the accident could not have happened if the ambulance had not been parked so as to obstruct the traffic. "As a general rule, it may be said that negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes other than plaintiff's fault, is the proximate cause of the injury. So that, where several causes combine to produce injuries, a person is not relieved from liability because he is responsible for only one of them, it being sufficient that his negligence is an efficient cause without which the injury would not have resulted to as great an extent, and that such other cause is not attributable to the person injured. But it must appear that the person sought to be charged was responsible for one of the causes which resulted in the injury. The concurring negligence of another cannot transform the remote into the proximate cause of an injury, or create or increase liabilities therefor." *Coca-Cola Bottling Co.* v. *McAnulty,* 185 Ark. 970, 50 S. W. (2d) 577; 45 C. J. 920.

As we have already said, whether this conduct on the part of the drivers of the ambulance was negligence was a question for the jury.

It would serve no useful purpose to set out or comment at length on the instructions. We have carefully examined the instructions given, those modified, and those refused, and have reached the conclusion that there was no error in giving, refusing or modifying instructions. The only serious question in this case is whether the appellants were guilty of negligence in parking the ambulance as they did under the circumstances. As we have already said, this was a question for the jury, and, although we might believe that the jury's verdict was

449

against the preponderance of the evidence, we have no authority to set it aside for that reason.

We find no error, and the judgment is affirmed.