JAMES W. PEOPLES AS ADMINISTRATOR OF THE ESTATE OF HOWARD S. PEOPLES, DECEASED, v. S. PORTER FULK, TRADING AS INDEPENDENT BUS LINES.

(Filed 7 January, 1942.)

**1. Pleadings § 26c—**

     When the complaint fails to allege that defendant's bus was stopped on the highway in such a manner as to leave insufficient space for the passage of cars on the remaining available portion of the hard surface, plaintiff's argument in the Supreme Court in regard to the space left for travel is unavailing.

**2. Automobiles § 18a—**

     Plaintiff's contention that the driver of defendant's bus was guilty of negligence in stopping the bus across an intersecting highway for the purpose of taking on a passenger is untenable when the evidence discloses that no vehicle or person involved in the accident was using or attempting to use the intersecting highway, resulting in a complete want of proof that the stopping of the bus across the intersecting highway had any causal connection with the collision.

**3. Automobiles § 14—**

     Starting and stopping on a highway in accordance with the exigencies of the occasion is an incident to the right of travel, and the word "park" and the words "leave standing" as used in sec. 123 (a), ch. 407, Public Laws 1937, are modified by the words of the statute "whether attended or unattended" so that they are synonymous, and neither term includes a mere temporary stop for a necessary purpose when there is no intent to break the continuity of the travel.

**4. Same—**

     The stopping of a bus on the hard surface of a highway outside of a business or residential district for the purpose of taking on a passenger is not parking or leaving the vehicle standing within the meaning of the terms as used in sec. 123 (a), ch. 407, Public Laws 1937.

**5. Same—**

Where a witness for plaintiff, whose testimony is uncontradicted, testifies that when the collision occurred all lights on defendant's bus went out, testimony of other witnesses for plaintiff, who arrived later, that at that time there were no lights on the bus, has no probative force upon the question of whether the rear lights of the bus were burning at the time of the collision.

**6. Automobiles § 18d—Evidence held to establish intervening negligence on part of driver of car insulating as a matter of law any negligence on part of bus operator in failing to have rear light burning.**

Defendant's bus stopped on the hard surface of the highway to take on a passenger. Its rear bumper was about even with the rear bumper of a car standing on the other side of the highway with its left wheels some four feet on the hard surface. Plaintiff's intestate was standing to the rear of the car. The driver of a car headed in the same direction as the bus and approaching from the rear, in attempting to go between the bus and the other car, hit the bus, the other car, and intestate, inflicting mortal injury. Plaintiff contended that there was no rear light burning on the bus and that the accident occurred early on a misty morning when visibility was poor. The driver of the car testified that he did not see the bus until he was within a car length of it, that he was traveling from 30 to 40 miles per hour, that his front lights were in good condition, and an eyewitness testified that the manner of his approach was such that he apprehended that an accident would occur and took to the bank and got behind a telephone pole. *Held:* Even conceding that there was conflicting evidence as to whether the rear light on the bus was burning, any negligence in this respect was insulated as a matter of law by the negligence of the driver of the car, since defendant could not have reasonably anticipated that anyone would operate his car in such manner as to bring about the collision as delineated on the record.

**7. Evidence § 42c—Statement of defendant held not to constitute admission of liability.**

The fact that the owner of the bus involved in the collision in suit went to the house where intestate was then lying in a critical condition from injuries received in the accident, and stated in talking to other persons there in the hearing of intestate's mother that he was going to get a better bus and would pay for any damage he did, does not constitute an admission of liability on his part, since the statement was not made to intestate or to anyone in a representative capacity, and since the statement did not amount to an admission of liability, but only that defendant was willing to pay damages for which he was responsible.

CLARKSON, J., concurring in result.

APPEAL by plaintiff from *Olive, Special Judge,* at the September Term, 1941, of FORSYTH. Affirmed.

This is a civil action to recover damages for wrongful death resulting from alleged negligence of defendant. The cause was originally tried in the Forsyth County Court and was heard in the court below on appeal upon assignments of error.

On 21 December, 1938, at about 6:35 a.m., an agent of defendant was operating one of his passenger buses westwardly on Polo Road near Winston-Salem. He stopped the bus at the intersection of a side road to pick up a passenger. At the time the bus stopped it was entirely on the hard surface portion of the highway on its right-hand side. At the time the bus stopped there was an automobile belonging to one Ransome standing on the opposite side of the road headed in the opposite direction with its right-hand wheels approximately in the drain ditch and its left-hand wheels about 4 inches on the pavement—the pavement being 18 or 20 feet wide. The rear bumpers of the bus and of the car were opposite each other. Before the passenger could get aboard and take her seat, one Morris, approaching from the rear of the bus, ran into the bus, struck the car and hit the deceased who was standing in the rear of the Ransome car, inflicting injuries which caused death. The Morris car then proceeded down the road a minimum of 50 yards before it was stopped.

When the cause came on to be tried in the Forsyth County Court the judge, at the conclusion of the evidence for the plaintiff and on motion of the defendant, entered judgment dismissing the action as of nonsuit. The court below, on appeal, affirmed and the plaintiff appealed.

*William H. Boyer and Richmond Rucker for plaintiff, appellant.*
*Manly, Hendren & Womble and I. E. Carlyle for defendant, appellee.*

BARNHILL, J. There are only two assignments of error presented for consideration. The first is directed to alleged error of the court below in overruling an exception of the plaintiff to the exclusion of certain evidence. The second is directed to the alleged error of the court in overruling plaintiff's exception to the action of the county court in sustaining the motion for judgment of nonsuit and in entering judgment of nonsuit.

While there was some argument here in respect to the space between the bus and the Ransome car, there is no allegation in the complaint that the defendant was negligent in that it stopped its bus in such manner as to leave an insufficient space between it and the Ransome car to permit other cars to pass. The plaintiff alleges that defendant was negligent in that (1) it parked and stopped the bus on the hard surface portion of the highway in violation of the statutes of this State; (2) it stopped its bus across an intersecting highway for the purpose of taking on a passenger; and (3) it failed to have a rear light on a dark and foggy morning when in the exercise of ordinary care it should have done so.

If it be conceded that it was an act of negligence for the defendant to stop its bus to take on a passenger at the intersection of a side road, such negligence was in nowise related to or productive of the subsequent collision. Morris was not turning or attempting to turn into the side

road.   There is no causal relation between such alleged negligence and the collision.

The temporary stop of the bus on the hard surface portion of the highway to take on a passenger did not constitute a violation of sec. 123 (a), ch. 407, Public Laws 1937, which provides that "no person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway."

The clause "whether attended or unattended" limits the meaning of the word "park" as well as of "leave standing."   The two terms, as thus limited, are synonymous.   A vehicle which is left standing is parked and a vehicle which is parked is left standing.   Neither term includes a mere temporary stop for a necessary purpose when there is no intent to break the continuity of the "travel."

"Park" or "leave standing" means something more than a mere temporary or momentary stop on the road for a necessary purpose.   *S. v. Carter,* 205 N. C., 761, 172 S. E., 415; *Stallings v. Transport Co.,* 210 N. C., 201, 185 S. E., 643, 42 C. J., 614, 2 Blashfield Cyc. Auto L. & P., 332, and cases cited; *Billingsley v. McCormich Transfer Co.,* 228 N. W., 424 (N. D.) ; *Axelson v. Jardine,* 223 N. W., 32 (N. D.) ; *Dare v. Bass,* 224 Pac., 646; *Kastler v. Tures,* 210 N. W., 415 (Wis.) ; *Henry v. S. Liebovitz & Sons,* 167 Atl., 304 (Pa.) ; *American Co. of Ark. v. Baker,* 60 S. W. (2d), 572 (Ark.) ; *Dolfosse v. Oil Co.,* 230 N. W., 31 (Wis.). Starting and stopping are as much an essential part of travel on a motor vehicle as is "motion."   Stopping for different causes, and according to the exigencies of the occasion, is a natural part of the "travel."   The right to stop when the occasion demands is incident to the right to travel. *Fulton v. Chouteau County Farmers Co.,* 32 Pac. (2d), 1025; *Morton v. Mooney,* 33 Pac. (2d), 262.

The remaining allegation of negligence is as to the failure of the defendant to have a rear light on his bus.   The evidence as to this is conflicting, if indeed the evidence of the witness Morris may be deemed to have any probative force.   While he testified that he did not see any rear light and that he thought he could have seen it had there been one, he also testified that he did not see the bus until he was within one car length of it and that his "mind was kind of in a blank and all I could do was just go through there and I didn't know hardly what happened—I didn't see anyone when I went through—I don't remember what I did." See *Johnson & Sons v. R. R.,* 214 N. C., 484, 199 S. E., 704.   The only other eyewitness testified that there was a light burning on the rear of the bus and that the inside lights were on.   This witness testified—and his testimony is uncontradicted—that when the Morris car hit the bus

all lights on the bus went out. Consequently, testimony of other witnesses, who arrived later, that at that time there were no lights on the bus has no probative force.

In view of this testimony as to rear lights, in the light of all the facts and circumstances, was it error for the court to enter judgment as of nonsuit? We must answer in the negative.

The witness Morris who was operating the car which struck the deceased approached the bus from the rear. His front lights were in good condition. He was traveling at from 30 to 40 miles per hour. He did not see the bus until he was within a car length of it. He cut his car first to the right and then to the left and attempted to go through the space between the bus and the Ransome car. He struck the bus and the Ransome car and hit the deceased who was standing on the shoulder of the road at the rear of the Ransome car and knocked him ten feet. In so doing he did considerable damage to his own car. One fender was pressed back against the front tire, puncturing it, and yet he went a space of from 50 to 68 yards before he was able to stop his car. His manner of approach was such that the other eyewitness apprehended that an accident would occur and he took to the bank and got behind a telephone pole. Morris did not testify that the headlights on the Ransome car in anywise interfered with his vision. Nor did he say that the headlights on his car would not enable him to see the bus had he been looking before he got within a car length thereof.

To hold that the defendant owed the duty to the plaintiff's intestate to foresee that a third person would operate a car in such manner and to bring about a collision such as is delineated on this record would not only "practically stretch foresight into omniscience," *Gant v. Gant,* 197 N. C., 164, 148 S. E., 134; *Beach v. Patton,* 208 N. C., 134, 179 S. E., 146, but would, in effect, require the anticipation of "whatsoever shall come to pass." "We apprehend that the legal principles by which individuals are held liable for their negligent acts impose no such farseeing and all-inclusive duty." *Beach v. Patton, supra.*

We conclude that the facts in this case bring it squarely within the opinions of this Court in *Smith v. Sink,* 211 N. C., 725, 192 S. E., 108; *Beach v. Patton, supra,* and *Powers v. Sternberg,* 213 N. C., 41, 195 S. E., 88. The latter case is particularly in point.

The cases cited and relied upon by plaintiff, represented by *Montgomery v. Blades,* 218 N. C., 680, 12 S. E. (2d), 217; *Page v. McLamb,* 215 N. C., 789, 3 S. E. (2d), 275; and *Clarke v. Marlin,* 215 N. C., 405, 2 S. E. (2d), 10, are factually distinguishable.

Plaintiff offered testimony tending to show that after the accident the defendant went to the home of the deceased and was there talking to other persons in the room in the hearing of the mother of the deceased and that he then said: "He was going to put on a better bus—he said

he would pay for the damage he done and he was going to put a better bus on that line and went on to tell how he was going to run it. I can't tell just all what." The plaintiff contends that this evidence tends to show an admission of liability by the defendant and that its exclusion was erroneous. We cannot so hold.

In the first place the statement was not made to the deceased or to anyone standing in a representative capacity. It was made generally in the presence of and to others who were at the same time visiting at the home of the deceased who was then in a critical condition by reason of his injuries. Secondly, the statement is not an admission of liability or of negligent conduct. The defendant merely said he was willing to pay for whatever damage he had done. The record fails to disclose that he is not still willing so to do, if and when it shall be determined that he is responsible for any damage or injury.

The court below properly overruled the exceptions of the plaintiff duly entered at the trial in the Forsyth County Court.

Affirmed.

CLARKSON, J., concurring in result: I concur in the result, but I do not agree with the reasonings in the main opinion in many respects.

I think there is no causal relation between the alleged negligence of the defendant and the injury sustained by plaintiff's intestate. The law is well-settled that the negligence relied on must be the proximate or one of the proximate causes of the injury complained of.

It will be noted that N. C. Code, 1939 (Michie), section 2621 (308), has as to stopping on a highway a double provision (1) "No person shall park (2) or leave standing any vehicle attended or unattended, upon the paved or improved or main traveled portion of any highway outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway." The proviso reads as follows: "In no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of not less than 15 feet upon the main traveled portion of said highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in both directions upon such highway." The other proviso is not material to the facts in this case nor does (c) which is applicable to cripple vehicles.

In the main opinion the proviso is not inserted. It permits a person to "park" or leave standing any vehicle whether "attended or unattended," but 15 feet upon the main traveled portion shall be left for free passage of other vehicles.

In *S. v. Carter,* 205 N. C., 761 (763), it is stated: "This word is in general use, with reference to motor driven vehicles, it means the permitting of such vehicle to remain standing on a public highway or street, while not in use. 42 C. J., 613. C. S., 2621 (66)." *Stallings v. Transport Co.,* 210. N. C., 200 (203).

In Vol. 2 Cyc., Automobile Law and Practice, sec. 1192, pp. 326-7, it is written: "In several jurisdictions there are statutes providing that no vehicle shall be parked or left standing on the highway in such manner that there shall not be a space of a specified number of feet for the passage of other vehicles. A failure to leave the required unobstructed passage way constitutes negligence, unless the stopping is due to some unavoidable mishap, such as an accident wrecking the car, where, if the owner of the car is using due diligence to procure its removal, the statute does not apply. A statute requiring a driver stopping on the highway to leave a required number of feet for passage for other vehicles, is applicable where an automobile collided with a parked truck, although no other car was passing," citing a wealth of authorities. *Smithwick v. Pine Co.,* 200 N. C., 519.

A clear analysis of a statute in all respects identical with our own, except that, where impracticable to stop entirely on the shoulder, it required a space of 10 feet instead of 15 feet to be left open and unobstructed, will be found in *Fontaine v. Charas* (N. H.), 181 A., 417, 418, where the Court said: "The record is clear to the effect that it was 'practicable' for the defendant to have driven his car off of 'the paved or improved or main traveled portion' of the highway at the place where the accident occurred. It also appears to be conceded that his car was not disabled prior to the collision, and that the accident did not occur in a business or residence district. It does not appear, however, how long his car was stationary before the accident. From this lack of evidence the defendant contends that there is no evidence of 'parking.' Were 'parking the only act prohibited, it might be necessary to attempt a definition of that rather loose word as it is used in the statute, but since it is illegal not only to 'park' but also to 'leave standing,' we are of the opinion that the defendant's act of stopping where he did is sufficient to invoke the statute. To 'park' may imply halting a vehicle for some appreciable length of time, but there is no such connotation to be drawn from the words to 'leave standing any vehicle, whether attended or unattended.' We believe that by the use of this phrase the Legislature intended to make illegal any voluntary stopping of the vehicle on the highway for any length of time, be that length of time long or short, except, of course, such stops as the exigencies of traffic may require. It therefore follows that the defendant was guilty of a violation of the statute in stopping on the traveled part of the highway when he could

21—220

have driven off to the side, and it becomes unnecessary to consider the view which could have been obtained of his car or the clear space available for passage by it."

In 2 Cyc. Automobile Law and Practice, *supra,* the vast majority of the decisions are contrary to the meaning of "park" or "leave standing" set forth in the main opinion. In fact, the construction given in the main opinion would practically wipe out a statute made for safety on the highways.