AMERICAN BUS LINES, INC., *v.* MERRITT.

4-9968                                                254 S. W. 2d 963

Opinion delivered February 16, 1953.

*Wrape & Hernly, Rieves & Smith, Daggett & Daggett, Chandler, Shepherd, Haiskell & Williams* and *J. H. Spears,* for appellant.

*Matthews, Walsh & Thompson* and *Barrett, Wheatley, Smith & Deacon,* for appellee.

ROBINSON, Justice. This appeal grows out of a lawsuit, in which appellee, Merritt, was awarded a judgment of $6,000 for property damage and $40,000 for personal injuries. Such damage and injuries resulted from a head-on collision between a truck owned and operated by Merritt, and a truck owned by appellant, Dacus Lumber Company, and driven by its operator, Sam Slayton. The collision occurred when Slayton attempted to go around an American Bus Lines passenger coach which had been stopped by the driver, Albert Earl Cooper, on a paved portion of the highway.

About 8:30 A.M. on November 22nd, 1951, a bus owned by appellant, American Bus Lines (hereinafter referred to as "the bus company"), was proceeding north on Highway 61, about three miles north of Marion, Crittenden County, Arkansas. The bus stopped to discharge two passengers. At the point where it stopped the hard-surfaced portion of the road is twenty feet in width, and the shoulder on the east approximately ten feet in width, four feet of which is gravel. The vehicle stopped just beyond the intersection of Highway 61 and a county road. The latter road to the west of the highway is gravel and widens out to approximately one hundred feet where it joins Highway 61. About fifty feet east of Highway 61 are the Frisco Railroad tracks which the county road crosses going east. The terrain is flat in the vicinity of the place where the bus stopped. However, there is a slight rise in the highway, reaching its high point about fifty feet south of the center of the intersection of the county road and Highway 61.

There is conflicting testimony of the witnesses as to the exact spot where the bus had stopped at the time

of the collision. One witness claimed the bus had stopped forty feet north of the center of the intersection between Highway 61 and the county road, another witness maintained it was sixty feet, and the driver of the bus stated it was a hundred and ten feet. But it is established that when the bus stopped it was partly on and partly off the pavement. A wine colored automobile, the driver of which was never located, stopped behind the bus. While the bus and the automobile were in that position, the Dacus log truck approached from the south, and the Merritt refrigerator truck approached from the north. The driver of the Dacus truck drove over to the west side of Highway 61, for the purpose of passing the automobile and the bus, and collided head-on with the Merritt truck, which was traveling south on its side of the highway. Both trucks were practically demolished. Slayton, the driver of the Dacus truck, was slightly hurt and Merritt, the driver of the other truck, was severely injured.

Dacus and Slayton filed suit in Crittenden County against Merritt, a resident of Florida, and also against the bus company and its driver, Cooper, alleging negligence on the part of the bus company and Cooper in stopping the bus on the paved portion of the highway, and alleging that Merritt was negligent in driving at a dangerous and reckless rate of speed. Merritt answered, denying the allegations of negligence on his part, and filed a cross-complaint in which he alleged that he had received severe injuries in the collision and that the collision was due to the joint negligence of the bus company because its driver, Cooper, stopped the bus on a paved portion of the highway, and negligence on the part of the Dacus Lumber Company and its driver, by reason of Slayton's driving over onto the west portion of Highway 61 at a rapid and reckless rate of speed. The bus company denied any negligence on its part.

It was stipulated that the damage to Merritt's truck amounted to $6,000. The jury returned a verdict for Merritt against the Dacus Lumber Company and its driver, Sam Slayton, and the American Bus Lines and its driver, Albert Earl Cooper, jointly, and fixed the

damages at $46,000, $40,000 of which was for personal injuries and $6,000 for property damage. The jury also apportioned the blame equally between Sam Slayton and the Dacus Lumber Company, on the one hand, and Albert Earl Cooper and the American Bus Lines, on the other hand. The bus company and its driver, Cooper, and the Dacus Lumber Company and its driver, Slayton, have appealed.

The bus company urges for reversal: that there is no substantial evidence to support a judgment against it; that the court erred in giving the jury an instruction regarding the statute about a vehicle stopping on the highway; that the court erred in giving Merritt's requested instruction number 2, which deals with the duty of those using the highway; that the court erred in refusing to give the bus company's requested instruction number 8, which deals with the momentary stopping of the bus on the highway; and it is claimed that the verdict is excessive.

The Dacus Lumber Company and its driver, Slayton, urges for reversal: that there is no substantial evidence to support the verdict against them; that the verdict is excessive; and that the court erred in failing to give their requested instructions numbers 3, 4 and 5, concerning the damages.

It is first contended by the bus company that there is no substantial evidence of any negligence on its part. But we do not agree. Negligence is the doing of that which an ordinarily prudent person would not do under the circumstances, or the failure to do that which an ordinarily prudent person would do under the circumstances.

The jury could have found from the evidence that the bus could have been driven entirely off the paved portion of the highway on the east side to discharge the passengers; or that the bus could have stopped about fifty feet before it reached the intersection of the county road, where there was more room on the shoulder to stop, and the bus could have been entirely removed from

the pavement before stopping; or that the bus could have been driven onto the west side of Highway 61, where there was ample space on the graveled portion of the county road for the bus to discharge its passengers, and that stopping the bus on the much traveled Highway 61, and consequently blocking a portion of the pavement and leaving less than twenty feet for other users of the road, was doing something that an ordinarily prudent person would not have done in the circumstances. Therefore, the court was justified by the evidence in the case in giving instruction number 2, which told the jury it was authorized to find against the bus company, in the event it should find the bus driver negligent in stopping the bus when and where he did stop it.

Appellant, bus company, stoutly complains of the court's action in giving instruction number one requested by Dacus, which is as follows:

"You are instructed that persons using the highways of this State are required to observe the laws with respect to traffic and highway usage in general. It is unlawful for them to do any act forbidden, or fail to perform any act required, by the highway traffic statutes of this State.

"You are further told that upon any highway outside of a business or residence district in this State no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of such highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available for a distance of three hundred feet in each direction upon such highway.

"Therefore, if you find from a preponderance of the evidence that Albert Earl Cooper, while on duty for his employer, American Bus Lines, Incorporated,

stopped the passenger bus on the paved, improved, or main traveled part of Highway Number 61 when it was practical to stop it off such portion of said highway; or, if you find from a preponderance of the evidence that he stopped said bus in such position that there was not remaining a clear and unobstructed width of at least twenty feet of such highway opposite his bus for the free passage of other vehicles, then you are instructed that this is evidence of negligence on the part of the said Albert Earl Cooper and American Bus Lines, Incorporated, which may be considered by you, along with all other facts and circumstances revealed by the evidence, in determination of their ultimate liability or non-liability to all persons injured or damaged by their acts in this connection.''

This instruction is based on Ark. Stats., § 75-647, which reads as follows:

''Stopping, standing, or parking outside of business or residence districts.—(a) Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 300 feet in each direction upon such highway.

''(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such' manner and to such extent that it is impossible to avoid stopping and temporarily leave such disabled vehicle in such position.''

It is the contention of the bus company that the above quoted statute is not applicable to a situation where there is only a momentary stop, as they say existed

when the bus stopped merely long enough to discharge two passengers. To sustain their position in this respect, they rely, to a large extent, on the case of *A. S. Barboro & Company* v. *James,* 205 Ark. 53, 168 S. W. 2d 202. The facts in that case are quite similar to the facts in the case at bar, but there is a distinction by reason of which the Barboro case is not controlling here. In that case the Barboro truck driver slowed down, with the intention of turning to his left, across the highway, for the purpose of going to a store located to the left. Here, the bus company's vehicle stopped on the pavement for the purpose of unloading passengers. It was held in the Barboro case that it was an error to instruct the jury with regard to the statute providing ". . . no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles. . . ." This court held that the statute was not applicable in the situation there presented.

A common sense interpretation must be placed on the statute. It was said in *Cohen* v. *Ramey,* 201 Ark. 713, 147 S. W. 2d 338: "The short or temporary stop that Flora Ramey made to allow two cars close to her to pass did not in any sense amount to a parking or stopping on the roadside. It was a momentary or temporary stopping and a thing she had to do before she could continue the turn to the east side of the road she was making. . . . She had the superior right to the use of the highway in the turning movement of her car. . . ."

To hold that the statute applies to a situation like the Barboro case would be placing a construction on the statute that was never intended. There it was necessary for the driver of the vehicle to turn to his left, across a highway, to reach his destination. Hence, to hold here, as we are doing, that the statute is applicable

does not impair the Barboro case because the factual situation is different. Barboro stopped to permit an approaching vehicle to pass him before he turned across the highway. He may have been negligent if he had done any less. Here, the exigencies of the traffic situation did not require the bus to stop at all. It merely stopped to discharge two passengers and, according to the evidence, it could have been completely removed from the paved portion of the highway in the situation that existed.

The statute provides: ". . . no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway *when it is practical to stop, park, or so leave such vehicle off such part of said highway. . . .*" (Italics our own).

Every case must be decided on its own facts; and in some cases, as here, it becomes a question for the jury as to whether it is practical to stop the vehicle off the highway. In others, as the Barboro case, where it is obvious that it would have been impractical to remove the car from the pavement before stopping to permit the passage of another vehicle before turning to the left, and where reasonable minds cannot reach any other conclusion, then it becomes a matter of law that the statute is not applicable. But here, where reasonable minds may differ as to whether it is practical to remove the vehicle from the pavement before stopping, it becomes a question for the jury, and the statute may be taken into consideration in determining whether there was negligence in stopping the bus on the pavement.

Also, appellant, bus company, cites Blashfield 2A, Permanent Edition, § 1197: "The words 'to park' or 'to stop' in a statute prohibiting the parking of cars in the highway, mean something more than a mere temporary or momentary stoppage on the road for a necessary purpose. Accordingly . . . stopping momentarily to permit a person to board or alight from a vehicle . . . does not constitute a violation of such a

statute. . . ." The only authority cited for that text is *American Company of Arkansas* v. *Baker,* 187 Ark. 492, 60 S. W. 2d 572. This case was decided in 1933 prior to the adoption of our present statute in 1937. The principal distinction between the two statutes is that the 1927 statute prohibited the "parking" or "leave standing" and also provided that fifteen feet of the main portion of the highway should be left unobstructed, whereas the 1937 statute provides that no person shall "stop, park or leave standing," and also provides for an unobstructed width of at least twenty feet.

Appellants recognize that the Baker case was decided prior to the adoption of our present statute which prohibits the stopping of a vehicle, as well as the parking or "leave standing" of such vehicle, but maintain that the Barboro case, which was decided subsequent to the passage of the 1937 act, is authority for the contention that the addition of the word, "stop," and the further provision for leaving twenty feet of unobstructed road instead of fifteen, were of no consequence. But the Baker case is only authority for the principle that the statute is not applicable where, as a matter of law, the exigencies of the situation excuse the stopping. In that case a truck had become mired in mud on a road covered by water and an accident occurred when another truck stopped on the highway in an attempt to aid the stalled vehicle. There the exigencies of the situation were such that the statute prohibiting parking or "leave standing" on the highway was not applicable; and it was so held in that case.

Blashfield also says: "Under the usual statute against parking, stopping, or leaving standing, the prohibition includes a temporary halt, unless the stop is justified. Such an act may not involve 'parking' but it is 'stopping' or 'leaving standing.' The fundamental problem is one of *justification.*" (Italics our own.) The text cites the Supreme Court of New Hampshire as follows: "The legislature intended to make illegal any voluntary stopping of a vehicle on the highway for any length of time, be that length of time long or short, ex-

cept, of course, such stops as the exigencies of traffic may require.''

We have concluded that when all the facts and circumstances are taken into consideration, the court did not err by instructing the jury in regard to the statute prohibiting stopping on the paved portion of the highway.

As to the contention of Dacus Lumber Company that there is no substantial evidence of negligence on the part of its driver, Slayton, there is no merit to this claim. There was an attempt to show that the driver of the Dacus truck could not see the bus because of the slight rise in the highway, but this evidence is not convincing, nor would it be, even if true, a defense that would call for a directed verdict in favor of the Dacus Lumber Company and its driver. In fact, the evidence is overwhelming to the effect that Slayton was negligent and that his negligence contributed to cause the accident.

The evidence is equally as convincing that there was no negligence whatever on the part of Merritt, who was driving at a lawful and reasonable rate of speed, in a proper manner, on his own side of the highway when, without any warning, the Dacus truck turned out from behind the stopped bus and the wine colored automobile and met him head-on.

**Also, the court** correctly instructed the jury as to **the measure of** damages. Dacus and Slayton's instructions numbers 3 and 4 pertain to Merritt's duty to minimize his damages. There was no evidence that he had failed to minimize the damages, and instruction number 5 was so lengthy, involved and argumentative that the court was fully justified in refusing to give it.

The next point is that of appellants' claim of excessive damages. It is stipulated that the damage to Merritt's truck amounted to $6,000, so there is no issue on that question. However, the jury returned a verdict assessing the damages for personal injuries suffered by Merritt at $40,000, which appellants say is excessive.

According to the evidence, at the time of the collision Merritt was 36 years of age. He was engaged in the business of trucking, farming and ranching and his annual earnings were between $10,000 and $12,000. The nerve which controls the deltoid muscle in his left arm was permanently injured, with the result that he can no longer use that arm for manual labor. Shortly after the collision Merritt, who was rendered unconscious, was removed to a hospital at West Memphis. He was in a state of shock and had lost considerable blood. It was necessary to give him transfusions, consisting of five pints of blood and plasma. It was ascertained that he was bleeding internally and just as soon as the doctors felt it was safe to do so, they performed an operation, whereby a long incision was made enabling the physicians to explore the abdominal cavity. They discovered that the spleen was bleeding to such an extent that the hemorrhage could not be stopped without removing that organ, and this was done. In addition, they found it necessary to remove about fourteen inches of his intestines. As a result of this operation, adhesions may form which could cause considerable trouble. Some of his ribs and a shoulder blade were broken.

The only kind of work he knows how to do, trucking, farming and ranching, calls for hard labor. There is evidence to the effect that he has between a forty and fifty per cent disability which is permanent. He has an expectancy of about thirty-one years. According to the evidence, he had an income, as heretofore stated, of between $10,000 and $12,000 a year. If his earning capacity is diminished $3,000 per annum, which would be considerably less than forty or fifty per cent, as proven by the evidence, and his expectancy is multiplied by such diminished earning capacity and then reduced to its present value, it would amount to more than the $40,000 judgment, to say nothing of the pain and suffering which the evidence shows he has undergone.

Appellants have cited some cases where the judgments have been reduced when apparently the injuries were as severe as the one involved here. However, it is

a matter of common knowledge that the value of a dollar is much less today than a few years ago, and on the whole case we cannot say that the judgment is excessive or that there is any error.

Affirmed.

GRIFFIN SMITH, C. J., not participating.