Joseph MACK and Christine Mack; and The Estate of
David Wayne Mack, Christine Mack, Administratrix *v.*
Billy G. WILKERSON and T & S Sawmill, Inc.

90-283                                                   801 S.W.2d 26

Supreme Court of Arkansas
Opinion delivered December 17, 1990
[Rehearing denied January 14, 1991.*]

*Green and Henry*, by: *J.W. Green, Jr.*, for appellants.

*Smith, Eilbott & Humphries*, by: *Alan R. Humphries*, for
appellees.

JACK HOLT, JR., Chief Justice. This case involves a suit for
personal injuries and wrongful death.

On the morning of December 2, 1987, the appellee, Billy
Wilkerson, was driving a tractor/trailer rig loaded with sawdust.
Wilkerson was employed by the appellee, T & S Sawmill, Inc.
(Sawmill), which also owned the rig that Wilkerson was driving.
North of Pine Bluff, Wilkerson approached the Highway 79
bridge over the Arkansas River; the highway at that point had
four lanes — two lanes each going north and south. An accident
on the bridge had blocked both south-bound lanes; as a result,
Wilkerson stopped his truck in the outside lane behind a line of
stopped vehicles. Wilkerson turned on his flashing lights, locked
his trailer brakes, and waited in his truck for the accident to be
cleared. A Chevrolet Blazer was parked behind other stopped
vehicles on the inside lane next to Wilkerson.

Approximately ten minutes later, the appellant, Joseph
Mack, approach the bridge from behind Wilkerson. Mack was

---

*Corbin and Brown, JJ., not participating. ·

also driving a tractor/trailer rig and his son, David Mack, was a passenger. Traveling at an estimated speed of 35 miles per hour, Mack was unable to prevent his rig from colliding into both Wilkerson's rig and the Blazer. As a result, Mack was injured, and his son was killed.

Mack brought suit against Wilkerson and Sawmill and claimed that his accident was a result of Wilkerson's negligence; the Estate of David Mack also filed suit against the appellees for wrongful death. The cases were consolidated for trial, and the jury found in favor of Wilkerson and Sawmill.

The appellants assert two points of error on appeal: 1) that the trial court erred in refusing to give their requested jury instruction AMI 601 containing Ark. Code Ann. § 27-51-1303 (1987) and Arkansas Motor Carrier Act, 1955, 49 C.F.R. Ch. III § 392.22 (10-1-89 ed.), and 2) alternatively, that the trial court erred in refusing to give their requested jury instruction AMI 601 containing only section 27-51-1303. Both arguments are without merit, and we affirm.

Section 27-51-1303 addressed the stopping, standing, or parking outside of business of residence districts and provides in pertinent part as follows:

> (a)(1)   Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main-traveled part of the highway when it is practicable to stop, park, or leave the vehicle off such part of the highway. In every event an unobstructed width of the highway opposite a standing vehicle shall be left for *the free passage of other vehicles*, and a clear view of the stopped vehicles shall be available from a distance of two hundred feet (200') in each direction upon the highway.

> (Emphasis added.)

*     *     *     *

Section 392.22 addressed emergency signals with reference to stopped vehicles and provides in pertinent part as follows:

> (b) *Placement of warning devices* —

116

(1) *General rule.* Except as provided in paragraph (b)(2) of this section, whenever a vehicle is stopped upon the traveled portion of a highway or the shoulder of a highway for any cause *other than necessary traffic stops,* the driver shall as soon as possible, but in any event within 10 minutes, place the warning devices with which his vehicle is equipped in conformity with the requirements of § 393.95 of this subchapter, either three emergency reflective triangles, three electric emergency lanterns, three liquid-burning emergency flares, or three red emergency reflectors in the following manner:

(Emphasis added.)

\* \* \* \*

In *Burchfield* v. *Carroll,* 255 Ark. 245, 499 S.W.2d 620 (1973) (citing *American Bus Lines, Inc.* v. *Merritt,* 221 Ark. 596, 254 S.W.2d 963 (1953)), we noted with reference to Ark. Stat. Ann. § 75-647 (Repl. 1957) (the predecessor of section 27-51-1303) that the statute does not apply to stops arising out of the exigencies of traffic.

We note as well that section 392.22, by its own phrasing, excludes vehicles stopped for necessary traffic stops.

■ In this case, the evidence is undisputed that Wilkerson was properly stopped behind other vehicles in southbound traffic at the Highway 79 bridge because of an accident on the bridge. It is clear, then, that Wilkerson had stopped due to the exigencies of traffic and that the stop was a necessary one. Consequently, neither section 27-51-1303 nor section 392.22 applies to the circumstances of this case, and the trial court's refusal to give an incorrect instruction is not error. *See Davis* v. *Arkansas State Hwy. Comm'n,* 290 Ark. 358, 719 S.W.2d 694 (1986) (citing *Kanis* v. *Rogers,* 119 Ark. 120, 177 S.W. 413 (1915)).

Accordingly, the judgment is affirmed.

NEWBERN and PRICE, JJ., dissent.

DALE PRICE, Justice, dissenting. The majority opinion takes the position that Wilkerson was stopped due to exigencies of traffic. This is simply not borne out by the facts.

Black's Law Dictionary, Fifth Ed. (1979), defines "exigence" as:

> Demand, want, need, imperativeness. Something arising suddenly out of the current of events, any event or occasional combination of circumstances calling for immediate action or remedy; a pressing necessity; a sudden and unexpected happening or an unforeseen occurrence or condition . . . . State of being urgent or exigent; pressing need or demand; also, case requiring immediate attention, assistance, or remedy; critical period or condition pressing necessity. . . .

I quote appellee Wilkerson's testimony as abstracted:

> [A]t the point where I was stopped, there was nothing that would have kept me from pulling my vehicle over on the shoulder . . . It was a new truck and it was equipped with some safety warning devices. It had triangular warning devices. I knew they were there, what they were for, and how to use them.

> I pulled my truck up in the right, outside lane of traffic and stopped 12 or 13 feet behind the vehicle in front of me. I had been forewarned by CB radio that there was a wreck up in front of me. I wasn't even up to the bridge yet. I was probably 100 yards or less from the bridge . . . There was plenty of shoulder for me to pull my truck over on and there was nothing to keep me from pulling over.

> I had safety devices in my truck and knew how to use them. When I pulled up there I locked my brakes on my truck trailer and turned my flashers on. I was conscious of the fact that there could be someone come up behind me. I didn't get out of my truck because I was afraid I'd get hurt—get killed—because it was so foggy you couldn't see.

> I sat in the cab of my truck for 10 minutes before the accident occurred with the safety devices, triangular warning facilities, right there in the truck with me. I did not get out and go back and put up the triangular warning devices. I did not ever move my truck over to the right. I never moved my truck again after I pulled it up there and locked the wheels and sat there in it.

. . . .

I was forewarned that there were some problems up on the bridge.

This was not a situation where Wilkerson had stopped due to the exigencies of traffic. Wilkerson knew of the wreck ahead of him before he ever got to the bridge. He had been warned of the problem by CB radio. There was plenty of shoulder for him to pull over on. He had warning devices on board which he declined to use for fear, he says, that he might get hurt or killed.

The refused instructions merely set out the duty upon Wilkerson imposed by statute and regulation. They did not deprive Wilkerson of any argument concerning his own lack of negligence or negligence on the part of the appellants. The concluding paragraph of AMI 601 tells the jury that a violation of the statute and regulation, although not necessarily negligence, is evidence of negligence to be considered by the jury along with all the facts and circumstances in the case.

The appellants' theory of the case and the evidence they presented required the giving of AMI 601, including the statute and regulation. The majority relies on *Burchfield* v. *Carroll*, 255 Ark. 245, 499 S.W.2d 620 (1973), which, in my view, has no application inasmuch as the accident there occurred in a residential section. The statute was not applicable because it specifically excludes residential and business districts.

The majority also relies on *American Bus Lines, Inc.* v. *Merritt*, 221 Ark. 596, 254 S.W.2d 963 (1953). I, too, rely on that case wherein the court stated:

> Every case must be decided on its own facts; and in some cases, as here, it becomes a question for the jury as to whether it is practical to stop the vehicle off the highway. In others, as the Barboro case, where it is obvious that it would have been impractical to remove the car from the pavement before stopping to permit the passage of another vehicle before turning to the left, and where reasonable minds cannot reach any other conclusion, then it becomes a matter of law that the statute is not applicable. But here, where reasonable minds may differ as to whether it is

practical to remove the vehicle from the pavement before stopping, it becomes a question for the jury, and the statute may be taken into consideration in determining whether there was negligence in stopping the bus on the pavement.

This accident occurred outside a business or residential district. There were no exigencies of traffic because Wilkerson had advance notice before he ever reached the accident scene. The appellants had the right to submit their theory of the case to the jury based on the statute and regulation.

I restate *Merrit* as follows: "where reasonable minds might differ as to whether it is practical to remove the vehicle from the pavement before stopping, it becomes a question for the jury."

I would reverse and remand for a new trial.

NEWBERN, J., joins in the dissent.